# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## CASE NO. 24-12307-G

**GERMAN BOSQUE,**
**LOUIS SERRANO,**
**SERGIO PEREZ, and**
**DANIEL KELLY,**

      **Appellants/Defendants**

**vs.**

**JAFET CASTRO-REYES,**

      **Appellee/Plaintiff**

---

## BRIEF OF APPELLANT LUIS SERRANO

---

ON APPEAL FROM THE U.S. DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 1:22-cv-21397-KMW

Gail C. Bradford, Esq.
Florida Bar No. 0295980
Dean, Ringers, Morgan & Lawton, P.A.
Post Office Box 2928
Orlando, Florida 32802-2928
Tel:  407-422-4310   Fax:  407-648-0233
gbradford@drml-law.com
Attorneys for Appellant Luis Serrano

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
## DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Rule 26-1, Appellees City of Holly Hill and Nicholas Champion hereby disclose the following:

Appellant/Defendant Luis Serrano, by and through undersigned counsel, states that the following is an alphabetical list of the trial judge, attorneys, persons, firms, partnerships, and corporations with any known interest in the outcome of this appeal:

1. Bosque, German - Appellant/Defendant

2. Bradford, Gail C. - Counsel for Appellant/Defendant, Serrano

3. Castro-Reyes, Jafet – Appellee/Plaintiff

4. Dean, Ringers, Morgan and Lawton, P.A. - Counsel for Appellant/Defendant, Serrano

5. Dos Santos, Johan Daniel - Counsel for Appellee/Plaintiff, Castro-Reyes

6. Florida League of Cities - Interested Party, Corporation administering the Florida Municipal Insurance Trust

7. Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A. - Counsel for Appellants/Defendants, Bosque and Kelly

8. Kelly, Daniel - Appellant/Defendant

9. Kuehne, Benedict P. - Counsel for Appellee/Plaintiff, Castro-Reyes

10. Kuenhe Davis Law, P.A. - Counsel for Appellee/Plaintiff, Castro-Reyes

11. Martin, Lauren D. - Counsel for Appellant/Defendant, Sergio Perez

12. Michael J. Pizzi, Jr., P.A. - Counsel for Appellee/Plaintiff, Castro-Reyes

13. Pizzi, Jr., Michael A. - Counsel for Appellee/Plaintiff, Castro-Reyes

14. Perez, Sergio - Appellant/Defendant

15. Railey, Jonathan H. - Counsel for Appellants/Defendants, Bosque and Kelly

16. Serrano, Luis - Appellant/Defendant

17. Stearns, Jr., Christopher J. - Counsel for Appellants/Defendants, Bosque and Kelly

18. Williams, Kathleen M. - United States District Judge, Southern District of Florida

19. Wydler Law - Counsel for Appellant/Defendant, Sergio Perez

20. Wydler, Lourdes Espino - Counsel for Appellant/Defendant, Sergio Perez

Undersigned counsel certifies that there are no known entities whose publicly-traded stock, equity, or debt may be substantially affected by the outcome of the proceedings.

## STATEMENT REGARDING ORAL ARGUMENT

The issues presented in this appeal are not unique or complex and rest on well-established law. Appellant does not believe oral argument is necessary but would welcome the opportunity to present oral argument on this appeal, should the Court determine argument would aid the Court's analysis and consideration of the issues on appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...............................................i

STATEMENT REGARDING ORAL ARGUMENT ...................................iv

TABLE OF CONTENTS...........................................................................v

TABLE OF CITATIONS ..................................................................... viii

STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES .......................................................................... xii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ........................................................................ xii

PRELIMINARY STATEMENT ...............................................................1

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE...................................................................1

I.     Statement of the Facts ..........................................................2

      A.     Castro-Reyes exhibits signs of disorientation, and his family restrains him ....................................................2

      B.     Castro-Reyes' family call 911 for assistance............................6

      C.     Police Ofc. Kelly and Sgt. Bosque arrive on scene and try unsuccessfully to handcuff Castro-Reyes but Castro-Reyes fights police ....................................................7

D.    Ofc. Serrano responds to call for emergency backup and arrives on scene ............................................................8

E.    Ofc. Serrano repeatedly Tases Castro-Reyes with no effect ..................................................................................10

F.    Police officers forcibly remove Castro-Reyes from the apartment .........................................................................11

G.    Castro-Reyes has no memory of the day, engaging with police, or being detained ..........................................12

H.    The entire incident is captured on police body-worn camera ("BWC") video ................................................13

II.    Procedural History Pertinent to this Appeal ........................................15

III.    Standard of Review ..............................................................................18

SUMMARY OF THE ARGUMENT .....................................................................20

ARGUMENT .......................................................................................................21

I.    Serrano is entitled to qualified immunity from Castro-Reyes' Excessive Force claim .........................................................................21

A.    Qualified immunity analysis ....................................................23

B.    Castro-Reyes cannot overcome Serrano's entitlement to Qualified Immunity ................................................................25

      1.     Serrano did not use excessive force by repeatedly Tasing Castro-Reyes and therefore did not violate Castro-Reyes' constitutional rights ...............................25

      2.     The right was not clearly established at the time and under these circumstances .......................................30

II.    Serrano is entitled to summary judgment based on statutory immunity regarding Appellee Castro-Reyes' state law claim of Assault and Battery ............................................................................33

CONCLUSION ....................................................................................36

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ....................................37

CERTIFICATE OF SERVICE ................................................................37

# TABLE OF CITATIONS

## Cases

Alday v. Groover, 601 F. App'x 775 (11th Cir. 2015) .......................................29, 31

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L.

  Ed. 2d 202 (1986) ..........................................................................................19

Ansley v. Heinrich, 925 F. 2d 1339 (11th Cir. 1991)..............................................23

Baker v. City of Madison, Alabama, 67 F.4th 1268 (11th Cir. 2023)....................28

Baker v. Moskau, 335 F. App'x 864 (11th Cir. 2009)............................................18

Baxter v. Roberts, 54 F.4th 1241 (11th Cir. 2022) ................................................15

Bryant v. Jones, 575 F.3d 1281 (11th Cir. 2009).....................................................25

Buckley v. Haddock, 292 F. App'x 791 (11th Cir. 2008).......................................26

Caetano v. Massachusetts, 577 U.S. 411, 136 S. Ct. 1027, 194 L. Ed.

  2d 99 (2016)......................................................................................................10

Carr v. Tatangelo, 338 F.3d 1259 (11th Cir. 2003) .................................................22

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d

  265 (1986).........................................................................................................19

Charles v. Johnson, 18 F.4th 686 (11th Cir. 2021)................................................28

Coleman v. Hillsborough Cnty., 41 F.4th 1319 (11th Cir. 2022)...........................33

Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004).............................................28

Evers v. Gen. Motors Corp., 770 F.2d 984 (11th Cir. 1985)..................................19

Fils v. City of Aventura, 647 F.3d 1272 (11th Cir. 2011) ........................28

Glasscox v. Argo, City of, 903 F.3d 1207 (11th Cir. 2018) ....................30

Goodman v. Kimbrough, 718 F.3d 1325 (11th Cir. 2013)......................18

Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443

    (1989)..................................................................................................26

Harbert Int'l v. James, 157 F.3d 1271 (11th Cir. 1998) ..........................23

Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396

    (1982)..................................................................................................21

Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir.

    2004) ..............................................................................................22, 25

Hope v. Pelzer, 240 F.3d 975 (11th Cir. 2001).......................................24

Hoyt v. Cooks, 672 F.3d 972 (11th Cir. 2012) .......................................10

Jean-Baptiste v. Gutierrez, 627 F.3d 816 (11th Cir. 2010).....................27

Jeffrey v. Sarasota White Sox, 64 F.3d 590 (11th Cir. 1995)..................18

Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804

    (11th Cir. 2004) .................................................................................18

Mann v. Taser International, 588 F.3d 1291 (11th Cir. 2009) ...............29

Manners v. Cannella, 891 F.3d 959 (11th Cir. 2018)............................15

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106

    S. Ct. 1348, 89 L. Ed. 2d 538 (1986)..............................................18

Mobley v. Palm Beach Cnty. Sheriff Dep't, 783 F.3d 1347 (11th Cir. 2015) ............................................................................................29

Oliver v. Fiorino, 586 F.3d 898 (11th Cir. 2009) ....................................31

Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)............................................................................................23, 24

Peterson v. Pollack, 290 So. 3d 102 (Fla. 4th DCA 2020)......................34

Plumhoff v. Rickard, 572 U.S. 765, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014)..........................................................................................26

Poulin v. Bush, 650 F. Supp. 3d 1280 (M.D. Fla. 2023).........................30

Powell v. Snook, 25 F.4th 912 (11th Cir. 2022).....................................31

Prosper v. Martin, 989 F.3d 1242 (2021) ..............................................29

Reed v. State, 837 So. 2d 366 (Fla. 2002) .............................................34

Robinson v. Sauls, 46 F.4th 1332 (11th Cir. 2022) ...........................14, 19

Rowe v. City of Fort Lauderdale, 279 F.3d 1271 (11th Cir. 2002).........24

Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)............................................................................................23

Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)..........................................................................................14, 19

Snider v. Jefferson State Cmty. Coll., 344 F.3d 1325 (11th Cir. 2003) .................24

Stanley v. City of Dalton, Ga., 219 F.3d 1280 (11th Cir. 2000) ..............24

<u>Storck v. City of Coral Springs</u>, 354 F.3d 1307 (11th Cir. 2003) ..........................21

<u>Zivojinovich v. Barner</u>, 525 F.3d 1059 (11th Cir. 2008)........................................29

**Statutes**

28 U.S.C. § 1291 ................................................................................... ix

28 U.S.C. § 1331 ................................................................................... ix

28 U.S.C. § 1343 ................................................................................... ix

28 U.S.C. 1367(a) ................................................................................33

Fla. Stat. § 768.28 ................................................................................33

Fla. Stat. § 768.28(9)(a) ......................................................................34

**Rules**

Eleventh Circuit Rule 26-1 ..................................................................... i

Fed. R. App. P. 26.1 ............................................................................... i

Fed. R. App. P. 32 ................................................................................37

Fed. R. Civ. P. 56 ................................................................................18

## STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES

Appellant Serrano adopts the portions of the Briefs of Co-Appellants that are pertinent to the actions and arguments of Appellant Serrano.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is an action arising under the Constitution, laws, or treaties of the United States. Jurisdiction is therefore conferred upon the District Court on the basis of federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343.

On June 17, 2024, the Hon. Kathleen M. Williams, United States District Judge for the Southern District of Florida, issued an Omnibus Order [Doc. 159], granting in part and denying in part the summary judgment motions filed by Defendants [Docs. 99 (City of Opa-Locka), 100 (Bosque and Kelly), 103 (Serrano), 108 (Perez)] and denying Plaintiff's Partial Motion for Summary Judgment [Doc. 109]. Appellant Serrano appeals this final decision of a district court. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## PRELIMINARY STATEMENT

In this Brief, the parties will be referred to by name (e.g., Castro-Reyes, Serrano). References to the Record on Appeal will be by bracketed District Court Docket Number (e.g., [Doc. #-#]).

## STATEMENT OF THE ISSUES

I.    Whether the District Court erred in finding that Appellant Serrano is not entitled to qualified immunity.

II.   Whether this Court should exercise supplemental jurisdiction and find that Appellant Serrano is entitled to summary judgment regarding Appellee Castro-Reyes' state law Assault and Battery claim.

## STATEMENT OF THE CASE

This civil action and subsequent appeal arise from Appellee Castro-Reyes' assertions that Appellants and City of Opa-Locka Police Officers Bosque, Kelly, Perez, and Serrano violated Appellee's constitutional rights by illegally entering his home, falsely arrested him, using excessive force, and assaulted, battered, and falsely imprisoned him.[1] The issues on appeal regarding Appellant Serrano are whether Appellant Serrano used excessive force and therefore is not entitled to

---

[1]    Allegations against the City of Opa-Locka are not subject to this appeal. The City of Opa-Locka is not a party to this appeal.

1

qualified immunity as to Appellee Castro-Reyes' constitutional claims; and adjacently whether Appellant Serrano exhibited a wanton or willful disregard for Castro-Reyes' rights or safety as to Castro-Reyes' Assault and Battery state law claim as these claims are inexorably intertwined with the excessive force issue. Serrano is entitled to statutory immunity as to Castro-Reyes' Assault and Battery state law claim. The record evidence establishes that Appellant Serrano did not use excessive force and that there was no constitutional violation.

## I.    Statement of the Facts

This civil action arises from an incident on September 21, 2020, after relatives of Appellee Jafet Castro-Reyes called 911 for help after restraining and tying up Castro-Reyes while he was either under the influence or suffering from mental illness[2], and the subsequent police response. The facts supported by the record are as follows.

### A.    Castro-Reyes exhibits signs of disorientation, and his family restrains him

---

[2]    The First Amended Complaint repeatedly alleges that Castro-Reyes "suffered from mental illness." (*See e.g.*, First Amended Complaint, page 1, ¶¶ 21, 85.)

On the afternoon of September 21, 2020, relatives of Appellee Castro-Reyes called 911 for assistance regarding Appellee. (Josue Ayala Deposition[3] [Doc. 86-1] 21:23-25 [Doc. 86-1]; Rina Ayala Deposition[4] [Doc. 86-2] 31:13-15.)  At the time, Castro-Reyes lived alone at his apartment at 2544 York Street, Apartment 3, in Opa-Locka, Florida. (Josue Ayala Deposition [Doc. 86-1] 10:20-22; Pamela Betancourth Deposition[5] [Doc. 86-3] 11:9-15; Jafet Castro-Reyes Deposition[6] [Doc. 86-4] 52:20-25.)

Castro-Reyes had been acting oddly that day, throwing out everything in his apartment (Josue Ayala Deposition [Doc. 86-1] 26:22-27:2; Rina Ayala Deposition [Doc. 86-2] 25:20-26:6 (Castro-Reyes throwing all the things in the house out, which was odd) 28:23-29:3 (Castro-Reyes told her he threw furniture away, which witness found odd), 60:5-6 (Castro-Reyes' apartment almost empty), 60:11-12 (Castro-Reyes threw away everything) 31:13-14 (Castro-Reyes "looked weird"

---

[3]    Deposition of Jose Varela a/k/a Josue Alfredo Varela Ayala taken May 2, 2023 (redacted, with exhibit) filed July 12, 2023 [Doc. 86-1] (referenced herein as "Josue Ayala Deposition").  Josue Ayala is Plaintiff's cousin. (Josue Ayala Deposition 9:6-13.)

[4]    Deposition of Rina Ayala taken June 7, 2023 (redacted, no exhibits) filed July 12, 2023 [Doc. 86-2] (referenced herein as "Rina Ayala Deposition"). Rina Ayala is Plaintiff's aunt.  (Rina Ayala Deposition [Doc. 86-2]  16:20, 21:13.)

[5]    Deposition of Pamela Betancourth taken May 3, 2023 (redacted, no exhibits) filed July 12, 2023 [Doc. 86-3] (referenced herein as "Pamela Betancourth Deposition").   Plaintiff is the cousin of Pamela Betancourth's husband. (Pamela Betancourth Deposition [Doc. 86-3] 10:18-21.)

[6]    Deposition of Appellee/Plaintiff Jafet Castro-Reyes taken May 1, 2023, Vols. 1 and 2 (with exhibits) filed July 12, 2023 [Doc. 86-4] (referenced herein as "Jafet Castro-Reyes Deposition").

[and] "didn't look like himself."); Misael Perez Deposition[7] [Doc. 88-1]18:18-22, 20:4-6, 19:7-16 (Castro-Reyes said "he was trying to cleanse his life"); Pamela Betancourth Deposition [Doc. 86-3] 25:2-10 (Castro-Reyes "wanted to move and begin a new life" and gifted apartment belongings to witness), 27:8-13.)  Castro-Reyes "seemed weird" and was not his usual self. (Rina Ayala Deposition [Doc. 86-2] 29:9-18.)  He "looked strange."  (Rina Ayala Deposition [Doc. 86-2] 38:19-24.) Castro-Reyes "didn't look good." (Rina Ayala Deposition [Doc. 86-2] 58:5-6; *see also* Josue Ayala Deposition [Doc. 86-1] 26:25-6 (Castro-Reyes said he felt bad).) Castro-Reyes was unrecognizable and not acting normally. (Josue Ayala Deposition [Doc. 86-1] 21:23-22:11, 31:17-23 (witness was scared and had never seen Castro-Reyes this way before), 41:9-10 (same) 32:7-15 (Castro-Reyes anxious), 56:13-21 (Castro-Reyes not acting normal); Pamela Betancourth Deposition [Doc. 86-3] 29:4-6 (Castro-Reyes "a different person, not like himself").) Castro-Reyes was "not okay" and "not well." (Misael Perez Deposition [Doc. 88-1] 14:18-15:4, 16:22-17:1 (Castro-Reyes hyperactive), 26:9-27:9 (Castro-Reyes hyperactive and not normal).)  Castro-Reyes may have been under the influence of drugs or alcohol. (Rina Ayala Deposition [Doc. 86-2] 38:16-39:5, 58:5-17 (witness thought Plaintiff had been drinking alcohol.))

---

[7]    Deposition of Misael Perez taken on May 3, 2023 (redacted, no exhibits) filed July 13, 2023 [Doc. 88-1] (referenced herein as "Misael Perez Deposition"). Misael Perez and Castro-Reyes have known each other since childhood. (Misael Perez Deposition [Doc. 88-1] 12:12-20.)

Rina Ayala entered Castro-Reyes' apartment. (Rina Ayala Deposition [Doc. 86-2] 27:11-14.) Castro-Reyes was restless and wanted to leave the apartment. (Rina Ayala Deposition [Doc. 86-2] 29:21-30:3.) When Castro-Reyes did briefly leave the apartment, he was immediately brought back in by his relatives. (Rina Ayala Deposition [Doc. 86-2] 30:10-20.)

Castro-Reyes physically resisted his relatives' efforts to prevent him from leaving the apartment. (Rina Ayala Deposition [Doc. 86-2] 32:22-33:2.) His aunt, Rina Ayala, physically blocked Castro-Reyes from leaving the apartment. (Rina Ayala Deposition [Doc. 86-2] 33:25-1.) Castro-Reyes' relatives physically held and "hugged" him so that he would not leave. (Rina Ayala Deposition [Doc. 86-2] 34:7-8; Josue Ayala Deposition [Doc. 86-1] 61:1-12.) Castro-Reyes' relatives ended up tying his hands and legs to prevent him from leaving and because they were scared. (Josue Ayala Deposition [Doc. 86-1] 22:23 (tied Castro-Reyes' hands because witness was scared), 28:4-10 (same), 29:5-23 (witness tied Castro-Reyes' hands and feet), 55:2-24 (witness tied Castro-Reyes' legs with extension cord because witness was scared); Rina Ayala Deposition [Doc. 86-2] 31:2-4 (tied Castro-Reyes' hands), 34:13-36:2 (tied Castro-Reyes' hands and feet), 60:20-24 (relatives tied up Castro-Reyes so he would not push anyone or leave); Misael Perez Deposition [Doc. 88-1] 21:1-15.) Castro-Reyes' relatives with him did not want to let him leave the apartment. (Josue Ayala Deposition [Doc. 86-1] 60:22-4;

Rina Ayala Deposition [Doc. 86-2] 30:5-7.) They were concerned that Castro-Reyes could hurt himself and for his safety. (Misael Perez Deposition [Doc. 88-1] 32:17-24, 36:4-8; Josue Ayala Deposition [Doc. 86-1] 23:19-21; Rina Ayala Deposition [Doc. 86-2] 32:9-11.) However, Castro-Reyes' relatives felt that he needed more help than his family members could offer. (Rina Ayala Deposition [Doc. 86-2] 31:20-24 (Castro-Reyes needed someone who would understand things better than she). Castro-Reyes needed help. (Josue Ayala Deposition [Doc. 86-1] 61:16-22; Misael Perez Deposition [Doc. 88-1] 20:16-20 (911 called because Castro-Reyes "looked bad, in bad condition…[and] not well"); Pamela Betancourt Deposition [Doc. 86-3] 29:4-16.) Castro-Reyes was mentally ill. (Answer Number 4 of Plaintiff's Revised Response to Defendant [Luis Serrano's First Set of] Interrogatories to Plaintiff [Doc. 104-1].)

### B.    Castro-Reyes' family call 911 for assistance

Pamela Betancourth called 911. (Jose Ayala Deposition 51:12-15; Pamela Betancourth Deposition [Doc. 86-3] 31:24-32:14.) Pamela Betancourth assumed that Castro-Reyes had smoked marijuana. (Pamela Betancourth Deposition [Doc. 86-3] 32:4-33:18.) When police officers arrived on scene, she told the police officers that it was possible that Castro-Reyes had consumed marijuana. (Pamela Betancourth Deposition [Doc. 86-3] 34:10-15.)

C.    **Police Ofc. Kelly and Sgt. Bosque arrive on scene and try unsuccessfully to handcuff Castro-Reyes but Castro-Reyes fights police**

Appellant Kelly was the primary City of Opa-Locka police officer responding to the call for assistance and Appellant Bosque as back-up officer to Kelly were the first police officers to arrive on scene before Appellants Serrano and Perez. (*See* Declaration of German Bosque [Doc. 98-1], ¶ 4; Declaration of Daniel Kelly [Doc. 98-2], ¶ 5; Serrano Deposition[8] [Docs. 107-2 and 119] 16:11-21.) When police officers arrived, Ms. Ayala told officers to come inside the apartment to help her. (Rina Ayala Deposition [Doc. 86-2] 36:25-37:5, 42:7 (witness told Castro-Reyes she gave officers permission to enter); *see also* Misael Perez Deposition [Doc. 88-1] 22:1-3 (witness told officers that Castro-Reyes was inside apartment).) Ms. Ayala explained that Castro-Reyes was tied up because he wanted to go out and drive. (Rina Ayala Deposition [Doc. 86-2] 37:8-12.)

Officers attempted but were not able to completely handcuff Plaintiff. (Rina Ayala Deposition [Doc. 86-2] 56:23-25; Declaration of German Bosque [Doc. 98-1], ¶ 11 and Declaration of Daniel Kelly [Doc. 98-2], ¶ 8; *see also* Serrano Deposition [Docs. 107-2 and 119] 49:25-50:4.) Castro-Reyes was very combative

---

[8]    Deposition of Louis Serrano taken on May 5, 2023 (no exhibits) filed July 13, 2023 [Doc. 107-2] and Errata filed September 15, 2023 [Doc. 119] (referenced herein as "Serrano Deposition").

and violently and actively resisted efforts to be handcuffed. (Declaration of Daniel Kelly [Doc. 98-2], ¶ 8 and Declaration of German Bosque [Doc. 98-1], ¶ 11.) Castro-Reyes repeatedly yelled "I am God." (Josue Ayala Deposition [Doc. 86-1] 37:12-17; Rina Ayala Deposition [Doc. 86-2] 50:20-21; *see also* Josue Ayala Deposition [Doc. 86-1] 54:23-25 (Castro-Reyes said to seek God), 73:8-16 (Castro-Reyes told officers that "they were not welcome; that only God could go into his house.").) Emergency police backup was requested.  (Declaration of German Bosque [Doc. 98-1], ¶ 12.)

### D.    Ofc. Serrano responds to call for emergency backup and arrives on scene

Appellant Luis Serrano was a uniformed police officer for the City of Opa-Locka on September 21, 2020.  (Declaration of Luis Serrano [Doc. 104-2], ¶¶ 1 and 2.)  He responded to Castro-Reyes' apartment, in Opa-Locka as emergency backup for police officers calling for help with a combative subject at that address. (Declaration of Luis Serrano [Doc. 104-2], ¶ 3; Serrano Deposition [Docs. 107-2 and 119] 18-5.) Numerous other officers responded to the call for emergency backup.  (Declaration of Luis Serrano [Doc. 104-2], ¶ 6.) Appellant Serrano did not have dispatch information regarding the call before officers' request for emergency backup and before his arrival on scene other than the call for emergency backup. (Declaration of Luis Serrano [Doc. 104-2], ¶ 4.)

8

Appellant Serrano heard loud yelling coming from the small apartment complex at 2544 York Street. (Declaration of Luis Serrano [Doc. 104-2], ¶ 7.) He ran to Castro-Reyes' apartment, where he saw Appellants Bosque and Kelly physically attempting to subdue two males. (Declaration of Luis Serrano [Doc. 104-2], ¶ 8.) One of the males was tied up with an extension cord and a red rope, and the other male was holding the tied up individual. (Declaration of Luis Serrano [Doc. 104-2], ¶ 8.) The male who was tied up was the Appellee/Plaintiff, Jafet Castro-Reyes. (Declaration of Luis Serrano [Doc. 104-2], ¶ 9.)

As Serrano entered the apartment, he asked who the subject was and heard "the one who was tied up!" (Declaration of Luis Serrano [Doc. 104-2], ¶ 10.) Officers repeatedly ordered Castro-Reyes to roll over onto his belly so he could be handcuffed. Castro-Reyes refused to follow officer instructions. Castro-Reyes also refused to allow officers to roll him over onto his belly. (Declaration of Luis Serrano [Doc. 104-2], ¶ 11.) Castro-Reyes appeared to have extraordinary strength and was resisting being taken into custody. (Declaration of Luis Serrano [Doc. 104-2], ¶ 12.) The scene was chaotic. (Declaration of Luis Serrano [Doc. 104-2], ¶ 13.)

## E.    Ofc. Serrano repeatedly Tases Castro-Reyes with no effect

After attempts to roll Castro-Reyes over onto his belly failed, Serrano deployed his City-issued Taser, using prongs.[9]   After a full cycle with no effect, Jafet Castro-Reyes still would not comply with lawful orders from police. (Declaration of Luis Serrano [Doc. 104-2], ¶ 14.)   Serrano then administered numerous drive or dry stuns on Castro-Reyes with his Taser but Castro-Reyes still did not comply with officer instructions and commands. (Declaration of Luis Serrano [Doc. 104-2], ¶ 15; Serrano Deposition [Docs. 107-2 and 119] 26:4-7, 38:25-39:2.)   Serrano estimates that he Tased Castro-Reyes 20 times in total. (Serrano Deposition [Docs. 107-2 and 119] 75:13-14.) Serrano looked for compliance from Castro-Reyes after each application of the Taser.  (Declaration of

---

[9]        Other cases have described the two ways that a Taser may be used. *See* Hoyt v. Cooks, 672 F.3d 972, 976, note 4 (11th Cir. 2012) ("'Dry stun mode' is also known as 'drive stun mode.' Plaintiffs' expert described the difference between the probes and dry stun: The [Taser] was classified as an electro-muscular disruptor when used to fire small probes attached to the weapon with thin wires because, in that mode, it overrides the central nervous system and makes muscle control impossible. The TASER can also be used as a pain compliance weapon in what is called the 'drive stun' mode. In the 'drive stun' mode, the weapon is pressed against a person's body and the trigger is pulled resulting in pain (a burning sensation) but the 'drive stun' mode does not disrupt muscle control."); *see also* Caetano v. Massachusetts, 577 U.S. 411, 415, note 2, 136 S. Ct. 1027, 1030, 194 L. Ed. 2d 99 (2016) describing Taser use.  ("A similar device, popularly known by the brand name "Taser," shoots out wires tipped with electrodes that can deliver an electrical current from a distance…Tasers can also be used like a stun gun without deploying the electrodes—a so-called "dry stun." (internal citations omitted).  *See also* Serrano Deposition [Docs. 107-2 and 119] 24:1-10 (describing Taser use with prongs and dry stun) and 53:17-18 (drive-stun is "Basically touching the Taser towards his body.").

Luis Serrano [Doc. 104-2], ¶ 15; Serrano Deposition [Docs. 107-2 and 119] 41:16-18, 44:21-24, 53:20-25, 59:1-11, 60:9-12, 61:17-23, 62:5-6.)   Castro-Reyes was not restrained when Serrano deployed or administered his Taser on him. (Declaration of Luis Serrano [Doc. 104-2], ¶ 16; Serrano Deposition [Docs. 107-2 and 119] 27:18-20.)

### F.    Police officers forcibly remove Castro-Reyes from the apartment

Due to the apartment tile floor being wet and slippery, other officers attempted to remove Castro-Reyes by force outside of the apartment to be placed into custody safely. However, Castro-Reyes braced himself and gripped the doorframe as officers pulled him outside, resisting officers' attempts to remove him from the apartment. (Declaration of Luis Serrano [Doc. 104-2], ¶ 17; Serrano Deposition [Docs. 107-2 and 119] 64:16-22.)   Castro-Reyes held onto the door to prevent officers from removing him from the apartment. (Rina Ayala Deposition [Doc. 86-2] 57:5-16.) Castro-Reyes was removed from the apartment by force to be placed into custody. (Declaration of Luis Serrano [Doc. 104-2], ¶ 17.)

After a lengthy, violent struggle with Castro-Reyes, Castro-Reyes was finally handcuffed and put into custody. (Declaration of Luis Serrano [Doc. 104-2], ¶ 18.)  Castro-Reyes was not arrested but was taken into custody under the Baker Act. (Declaration of Luis Serrano [Doc. 104-2], ¶ 19.)

G.    **Castro-Reyes has no memory of the day, engaging with police, or being detained**

Castro-Reyes has no recollection of events on September 21, 2020. (Jafet Castro-Reyes Deposition [Doc. 86-4] 11:12-12:11 (Castro-Reyes does not remember officers coming into the apartment, touching him, handcuffing him, carrying him outside the apartment, sitting on the ground outside the apartment, being treated by Fire Rescue, or being transported by ambulance to the hospital), 49:9-14 (Castro-Reyes does not remember what he was doing the morning of September 21, 2020, or if he went to work), 53:20-21 (Castro-Reyes does not remember throwing furniture away), 53:22-25 (Castro-Reyes does not remember telling anyone that he was going to cleanse his life and that's why he was throwing furniture away), 54:10-18 (Castro-Reyes does not remember being tied up), 55:11-56:15 (Castro-Reyes does not remember anything from 9:00 AM to 5:00 PM on September 21, 2020, or waking up, having breakfast, showering, getting dressed, or talking to anyone), 57:7-58:18 (Castro-Reyes does not remember officers coming into the apartment, telling officers that he was going to fight them, police officers asking him to roll over or give them his hands, telling police officers his name was God, holding his hands together and lacing his fingers when officers were trying to handcuff him, or asking officers if they wanted to die), 58:20-25 (Castro-Reyes does not remember relative placing leg across his throat and

12

shoulders), 59:16-19 (Castro-Reyes does not remember asking officers to leave the apartment), 59:21-60:3 (Castro-Reyes does not remember being Tased or being in pain), 150:6-8; Rina Ayala Deposition [Doc. 86-2] 23:19-20.)

Castro-Reyes was taken from the scene to the hospital by Fire Rescue. (Pamela Betancourth Deposition [Doc. 86-3] 44:9-10.)

### H.    The entire incident is captured on police body-worn camera ("BWC") video

The volatile and chaotic process of wrestling with Castro-Reyes wrestling with police and police attempting to completely handcuff Castro-Reyes and take him into custody is clearly captured on police officer body-worn camera ("BWC") videos.[10]   Bosque's BWC video ("Bosque- First approach Plaintiff and attempt

---

[10]    Bosque, Kelly, and Serrano each activated their body worn cameras (BWC), capturing on video the events at issue in their presence. Eight videos, including the officers' body-worn camera videos, were conventionally filed with the United States District Court Clerk on August 15, 2023 [Doc. 97], with the Court's permission [Doc. 92], for inclusion in the court record.

The officers' BWC videos relevant to taking Castro-Reyes into custody videos are titled as follows:

    a.    Bosque- First approach Plaintiff and attempt handcuff 9.21.2020 [13 min 7 sec] [3397];

    b.    Kelly First approach Plaintiff and attempt handcuff 9.21.2020 [19 min 28 sec] [3398];

    c.    Serrano (Taser) - 9.21.2020 [11 min 30 sec] [3399];

    d.    Bosque following cuffing 9.21.2020 [2 min 23 sec] [3400];

    e.    Bosque attempting to get PL to feet 9.21.2020 [1 min 13 sec] [3401]; and

handcuff 9.21.2020 [13 min 7 sec] [3397]") from time stamp 15:45:56 through handcuffing at 15:55:29 shows officers wrestling with Plaintiff. Serrano (in a short-sleeve uniform shirt) enters the apartment at approximately 15:50:05. Likewise, Kelly's BWC video ("Kelly First approach Plaintiff and attempt handcuff 9.21.2020 [19 min 28 sec] [3398]") from 15:45:20 through 15:54:44 provides another perspective of officers wrestling with Castro-Reyes. Serrano enters the apartment at approximately 15:50:05. The best perspective of what *Serrano* saw during the course of events at issue is *Serrano*'s BWC video ("Serrano (Taser) - 9.21.2020 [11 min 30 sec] [3399]"), particularly from 15:49:16 through 15:54:37. Furthermore, it is well established that a court may consider uncontroverted video evidence in evaluating summary judgment. *See* <u>Scott v. Harris</u>, 550 U.S. 372, 380-381, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007) (while court is required to view facts in light most favorable to nonmovant where there is genuine dispute as to facts, court should not rely on "visible fiction" but should rely on facts shown in video); <u>Robinson v. Sauls</u>, 46 F.4th 1332, 1340 (11th Cir. 2022) (internal citations omitted) ("'When opposing parties tell two different stories, one of which is blatantly contradicted by the record [as with a video

---

        f.     Kelly - Fire rescue attending 9.21.2020 [4 min 5 sec] [3402].

The filenames are included in Defendant Luis Serrano's Unopposed Motion to File Video Exhibits Conventionally filed July 12, 2023 [Doc. 87]. For purposes of this appeal, the most relevant is Serrano's BWC video.

recording of the incident], so that no reasonable jury could believe it, a court should not adopt that version of the facts.'"); Manners v. Cannella, 891 F.3d 959, 966-967 (11th Cir. 2018) (quoting Scott v. Harris, 550 U.S. at 380-381) (where video shows plaintiff repeatedly resisting officer's efforts to handcuff him, "summary judgment may be appropriate on facts that are revealed through a video recording: '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record [as with a video recording of the incident], so that no reasonable jury could believe it, a court should not adopt that version of the facts.'"); c.f. Baxter v. Roberts, 54 F.4th 1241, 1257-1258 (11th Cir. 2022) (court not required to accept plaintiff's subsequent interpretation of officer body worn camera video). In light of Castro-Reyes' complete lapse of memory regarding the events giving rise to his lawsuit, and there being no challenge to the veracity or completeness of the police officers' BWC videos, this Court may rely on the events as portrayed in the BWC videos.

## II.    Procedural History Pertinent to this Appeal

Castro-Reyes initially filed suit on May 4, 2022 [Doc. 1] in the United States District Court, Southern District of Florida against the City of Opa-Locka, German Bosque, Louis Serrano, Sergio Perez, and Unknown Officers.  After an initial round of motions to dismiss, Castro-Reyes filed his First Amended Complaint on

December 31, 2022 [Doc. 48], adding Kelly as a named Defendant.[11]  Defendants

answered [Docs. 93 (City), 94 (Bosque and Kelly), 95 (Serrano), and 96 (Perez)].

Appellee's First Amended Complaint alleges Fourth and Fourteenth

Amendment claims and state law claims against the City of Opa-Locka and City

Police Officers Bosque, Serrano, Perez, Kelly, "and Unknown Police Officers."

(*See generally* First Amended Complaint filed December 31, 2022 [Doc. 48].)

Appellee alleged various federal constitutional claims including "Illegal Entry into

Home," False Arrest, Excessive Force, a Fourth Amendment claim against the

City, and claims under state law including Assault and Battery, False

Imprisonment, and Negligent Training and/or Supervision, arising from the police

officers' actions on September 21, 2020.

On June 17, 2024, the Hon. Kathleen M. Williams issued an Omnibus Order

[Doc. 159], granting in part and denying in part the summary judgment motions

filed by Defendants [Docs. 99 (City of Opa-Locka), 100 (Bosque and Kelly), 103

(Serrano), 108 (Perez)] and denying Plaintiff's Partial Motion for Summary

Judgment [Doc. 109].  The District Court granted summary judgment to the

---

[11]    Defendants City and Perez, Bosque, and Serrano moved to dismiss [Docs. 52 (City) and 53 (Perez, Bosque, and Serrano)]. Plaintiff responded in opposition [Doc. 55], and Defendants replied [Doc. 66 (Perez, Bosque, and Serrano) and 67 (City)]. Defendant Kelly was not served until March 2023 and filed his Motion to Dismiss on May 19, 2023 [Doc. 82].  The Court denied Defendants' Motions to Dismiss but granted the City's Motion to Strike punitive damages and prejudgment interest against it. (Omnibus Order filed July 20, 2023 [Doc. 90].)

Appellant Officers with regard to the "illegal entry" claim in Count I. The District Court granted summary judgment to Serrano and Perez and denied summary judgment to Bosque and Kelly with regard to False Arrest in Count II. The District Court granted summary judgment to Bosque and Kelly and denied summary judgment to Serrano and Perez with regard to the excessive force claims in Count III, resulting in this appeal. The District Court denied summary judgment to the City only with regard to the false arrest claim against Bosque.[12] The District Court granted summary judgment on the basis of statutory immunity to Bosque and Kelly and denied summary judgment to Serrano and Perez with regard to the Assault and Battery claim. The District Court granted summary judgment to Appellant Officers regarding the state law False Imprisonment claim in Count V but denied summary judgment to the City. The District Court granted summary judgment to the City regarding the claim for Negligent training or Supervision. Lastly, the District Court found that Castro-Reyes' Fourteenth Amendment claims failed as a matter of law.

On July 16, 2024, Appellants Bosque, Serrano, Perez, and Kelly timely filed their Notice of Appeal [Doc. 162].

---

[12]    The District Court has since granted the City of Opa-Locka's Motion to Stay Pending Resolution of the individual Defendants' Appeal [Doc. 171].

### III.    Standard of Review

This Court reviews a District Court's grant of Summary Judgment under a *de novo* standard of review. Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th Cir. 2013). As such, this Court is to "apply the same legal standard used by the District Court." Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004).

Federal Rule 56(a) states that Summary Judgment is appropriate when "the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *See also* Jeffrey v. Sarasota White Sox, 64 F.3d 590, 593 (11th Cir. 1995). A dispute is "genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party, and a fact is not material if a dispute over that fact will not affect the outcome of the suit under governing law." Baker v. Moskau, 335 F. App'x 864, 868 (11th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

While all inferences are drawn in favor of the non-moving party, that party must present affirmative evidence supporting its position to defeat an otherwise appropriate Motion for Summary Judgment. *See e.g.* Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,* 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (non-movant must "do more than simply show there is some metaphysical

doubt as to the material facts") (citations omitted); Celotex Corp. v. Catrett, 477 U.S. 317, 324-325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value.").

Stated alternatively, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Furthermore, when there is video evidence of the incident at issue, that video evidence should be considered and given appropriate weight, more so when it is the only, uncontroverted, real-time, record evidence of what actually happened. See Scott v. Harris, 550 U.S. 372, 380-381, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007) (while court is required to view facts in light most favorable to nonmovant where there is genuine dispute as to facts, court should not rely on "visible fiction" but should rely on facts shown in video); Robinson v. Sauls, 46 F.4th 1332, 1340 (11th Cir. 2022) (internal citations omitted) ("'When opposing parties tell two different stories, one of which is blatantly contradicted by the record [as with a video recording of the incident], so that no reasonable jury could believe it, a court should not adopt that version of the facts.'"); Manners v. Cannella, 891 F.3d 959, 966-967 (11th Cir. 2018) (quoting Scott v. Harris, 550

U.S. at 380-381) (where video shows plaintiff repeatedly resisting officer's efforts to handcuff him, "summary judgment may be appropriate on facts that are revealed through a video recording: '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record [as with a video recording of the incident], so that no reasonable jury could believe it, a court should not adopt that version of the facts.'"); *c.f.* <u>Baxter v. Roberts</u>, 54 F.4th 1241, 1257-1258 (11th Cir. 2022) (court not required to accept plaintiff's subsequent interpretation of officer body worn camera video).

In the case at bar, Castro-Reyes has *no* recollection of the events on which his lawsuit is based.  *See* Statement of the Facts, I.(G) at pages 12-13, *supra*. Therefore, the video evidence in the form of police officer body-worn camera video, and the officers' declarations and sworn testimony, establish the undisputed facts and record evidence, and show that Serrano is entitled to qualified immunity and summary judgment.

## SUMMARY OF THE ARGUMENT

Appellant Serrano did not engage in excessive force or violate clearly established law in assisting in taking Castro-Reyes into custody.  While the number of times Serrano attempted to use his Taser is relatively high, the application of the Taser was not effective and Castro-Reyes did not comply with any police officer

instructions. Instead, Castro-Reyes continued to fight and resist officers in a chaotic situation until he was finally handcuffed.

Consequently, the District Court's denial of qualified immunity and summary judgment as to the excessive force question should be reversed.

Likewise, because Serrano did not engage in excessive force, the force he used was reasonable in an effort to control Castro-Reyes. Serrano did not act in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, and Serrano is entitled to statutory immunity and summary judgment regarding Castro-Reyes' state law claim of Assault and Battery.

## ARGUMENT

### I.    Serrano is entitled to qualified immunity from Castro-Reyes' Excessive Force claim

Qualified immunity shields government officials acting within their discretionary authority from liability unless the officials "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). "If reasonable public officials could differ on the lawfulness of the defendants' actions, the defendants are entitled to immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003). Qualified immunity

protects "'all but the plainly incompetent or those who knowingly violate the law.'" Carr v. Tatangelo, 338 F.3d 1259, 1266 (11th Cir. 2003) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct 1092, 1096, 89 L. Ed. 2d 271 (1986)).

To receive qualified immunity, a government official must first establish that he acted within his discretionary authority. Powell v. Sheriff, Fulton Cnty. Ga., 511 F. App'x 957, 960 (11th Cir. 2013) (citing Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009)). "A government official acts within [his] discretionary authority if the actions were (1) undertaken pursuant to the performance of his duties and (2) within the scope of his authority." Jones v. City of Atlanta, 192 F. App'x 894, 897 (11th Cir. 2006) (per curiam). "Once discretionary authority is established, the burden shifts to the plaintiff to show that qualified immunity should not apply." Powell, 511 F. App'x at 960.

Castro-Reyes does not dispute or argue that Serrano was acting outside his discretionary authority. Therefore, the burden shifts to Castro-Reyes to show that Serrano violated a constitutional right clearly established at the time. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (plaintiff must show "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."). The Court may consider these questions in any order. Powell, 511 F. App'x at 960 (citing Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) ("We

22

recently reaffirmed that lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first.")).

### A.    Qualified immunity analysis

Qualified immunity should be determined as early in the legal proceedings as possible as the purpose of the qualified immunity doctrine is "to keep the public official out of the courtroom, free to exercise discretionary duties under clearly established law without the constant threat of lawsuits." Ansley v. Heinrich, 925 F. 2d 1339, 1345 (11th Cir. 1991). *See* Harbert Int'l v. James, 157 F.3d 1271 (11th Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 814, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). *See also* Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) ("a ruling on that issue [of qualified immunity] should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.").

A qualified immunity analysis asks whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right, and whether or not the right was clearly established. Saucier, 533 U.S. at 201. The inquiry must be undertaken in the light of the case's specific factual context and not as a broad general proposition. *Id*. The inquiry may be conducted in no particular order. *See* Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 817, 172 L. Ed. 2d 565 (2009) ("[t]he judges of the

district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." _Id._ at 817.

In the Eleventh Circuit, when analyzing a qualified immunity defense, the Court must look "to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." Hope v. Pelzer, 240 F.3d 975, 981 (11th Cir. 2001). In other words, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1280 (11th Cir. 2002); _see also_ Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1298-1299 (11th Cir. 2000). There should be no question about the unlawfulness of the official's action: "[I]n the light of preexisting law, the unlawfulness must be apparent: plain, clear, obvious." Snider v. Jefferson State Cmty. Coll., 344 F.3d 1325, 1328 (11th Cir. 2003). In short, "qualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" Hope v. Pelzer,

24

536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002) (quoting

Saucier v. Katz, 533 U.S. 194, 206, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

In the case at bar, and at the most fundamental level, there simply can be no

question that a police officer who responds to an emergency call from other police

officers and arrives on scene to find multiple people, including family members

and police officers, wrestling with a grossly uncooperative and superhumanly

strong man to get that subject safely handcuffed, cannot use reasonable force to

effect compliance.  Serrano is entitled to qualified immunity.

**B.**    **Castro-Reyes cannot overcome Serrano's entitlement to Qualified Immunity**

As noted above, it is *Appellee's* burden to show that Serrano is not entitled

to qualified immunity.  *See* Bryant v. Jones, 575 F.3d 1281, 1295 (11th Cir. 2009).

Castro-Reyes must show (1) that the defendant violated a constitutional right and

(2) that the right was clearly established at the time of the alleged violation.  *See*

Holloman, 370 F.3d at 1264.  Castro-Reyes cannot.

**1.**    **Serrano did not use excessive force by repeatedly Tasing Castro-Reyes and therefore did not violate Castro-Reyes' constitutional rights**

Under the Fourth Amendment, Serrano's use of force is to be viewed on a

"objective reasonableness" standard:  "the question is whether the officers' actions

25

are 'objectively reasonable' in light of the facts and circumstances confronting them…" Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989) (citing Scott v. United States, 436 U.S. 128, 137-139, 98 S. Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978), and Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1879 20 L. Ed 2d 889 (1968)).  That standard "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396.    "The inquiry requires analyzing the totality of circumstances." Plumhoff v. Rickard, 572 U.S. 765, 774, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014).  Furthermore, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989) (citing Terry v. Ohio, 392 U.S. 1, 20-22, 88 S. Ct. 1868, 1879-1881, 1879 20 L. Ed 2d 889 (1968)).  Likewise, the "objectively reasonable" analysis does not involve consideration of a universe of alternatives. "We do not sit in judgment to determine whether an officer made the best or a good or even a bad decision in the manner of carrying out an arrest. The Court's task is only to determine whether an officer's conduct falls within the outside borders of what is reasonable in the constitutional sense." Buckley v. Haddock, 292 F. App'x 791, 794 (11th Cir. 2008).

Rather, "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. at 396-397.

Finally, the Fourth Amendment does not prohibit use of force. It prohibits *unreasonable* force *under the circumstances*. "Although suspects have a right to be free from force that is excessive, they are not protected against a use of force that is 'necessary in the situation at hand.'" Jean-Baptiste v. Gutierrez, 627 F.3d 816, 821 (11th Cir. 2010) (quoting Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir.2002)). An individual subject to arrest may well be subject to reasonable force to accomplish that arrest. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Jean-Baptiste v. Gutierrez, 627 F.3d at 821 (citing Graham, 490 U.S. at 396, 109 S. Ct. at 1871-1872).

In considering the application of force in this case, Castro-Reyes' claims against Serrano are limited to Serrano's Taser use. Castro-Reyes' allegations against Serrano focus on Serrano's repeated use of a Taser to encourage Castro-Reyes' compliance with officer instructions, to stop Castro-Reyes fighting with

officers, and to safely get Castro-Reyes into custody. However, "The use of a [T]aser is not categorically unconstitutional." Charles v. Johnson, 18 F.4th 686, 701 (11th Cir. 2021). The use of a Taser "could be appropriate where an officer reasonably believes the suspect is violent." Fils v. City of Aventura, 647 F.3d 1272, 1289 (11th Cir. 2011). In fact, the Taser may be the most appropriate tool for the job under the circumstances. For example, in Draper v. Reynolds, the Eleventh Circuit wrote:

> Although being struck by a taser gun is an unpleasant experience, the amount of force Reynolds used—a single use of the taser gun causing a one-time shocking—was reasonably proportionate to the need for force and did not inflict any serious injury. Indeed, the police video shows that Draper was standing up, handcuffed, and coherent shortly after the taser gun stunned and calmed him. The single use of the taser gun may well have prevented a physical struggle and serious harm to either Draper or Reynolds.

Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004); *see also* Baker v. City of Madison, Alabama, 67 F.4th 1268, 1279-1280 (11th Cir. 2023) (single use of Taser on unrestrained, combative, and noncompliant suspect who was suspected to be under the influence, suffering from a medical condition, or having a seizure not excessive force).

It is well-established in this Circuit that, under the circumstances Serrano faced, to wit, an unrestrained, combative, uncooperative individual who refused to follow officer instructions and posed a threat to himself and the officers struggling to take him into custody, repeated Taser use is a reasonable use of force. *See*

28

Prosper v. Martin, 989 F.3d 1242, 1254 (2021) ("We have held that 'the use of the taser gun to subdue a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police is not excessive force.'", no Fourth Amendment violation for Taser use where officer believed that suspect posed an immediate threat and would not submit to arrest without a fight) (quoting Zivojinovich v. Barner, 525 F.3d 1059, 1065, 1073 (11th Cir. 2008)); Mobley v. Palm Beach Cnty. Sheriff Dep't, 783 F.3d 1347, 1355 (11th Cir. 2015) (Tasing a resisting and dangerous suspect three times to effect an arrest was not unreasonable where suspect had assaulted a police officer with a deadly weapon, attempted to evade capture by hiding, and refused to surrender his hands to be handcuffed); Alday v. Groover, 601 F. App'x 775, 776-778 (11th Cir. 2015) (Tasing a non-violent handcuffed arrestee in the neck for five to ten seconds after she refused to exit the police car did not deprive the officer of qualified immunity); Mann v. Taser International, 588 F.3d 1291, 1306 (11th Cir. 2009) (Tasing handcuffed but actively resisting suspect three times not excessive force); Zivojinovich v. Barner, 525 F.3d 1059, 1065, 1073 (11th Cir. 2008) (Tasing handcuffed but belligerent suspect reasonable when suspect unintentionally spit blood in officer's face and refused to follow instructions) (citing Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004)); Buckley v. Haddock, 292 F. App'x 791, 795-796 (11th Cir. 2008) (Tasing handcuffed suspect who was passively resisting arrest and

disobeying commands not objectively unreasonable); <u>Poulin v. Bush</u>, 650 F. Supp. 3d 1280, 1296 (M.D. Fla. 2023) (repeated Taser use was not excessive force and was reasonable in light of threat posed by suspect and suspect's continued active resistance). In contrast, Taser use on a *compliant*, *non-violent* subject *is* unreasonable force. *See* <u>Glasscox v. Argo, City of</u>, 903 F.3d 1207, 1216 (11th Cir. 2018) (repeated Taser use after plaintiff no longer resisting, holding out hands, following officer instructions, making no attempt to resist or flee, and voicing intent to cooperate was unreasonable use of force). But Castro-Reyes was not a compliant, nonviolent subject; Castro-Reyes was actively fighting the police officers who were called to assist him. Castro-Reyes admits in his Response to Serrano's Motion for Summary Judgment that Castro-Reyes "engaged in active resistance" [Doc. 137 at page 13]. This justifies reasonable force. *See* <u>Graham v. Connor</u>, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871-1872, 104 L. Ed. 2d 443 (1989). Therefore, Serrano's use of the Taser on Castro-Reyes in an attempt to get Castro-Reyes safely handcuffed and secured is not excessive force and is not a constitutional violation.

**2.      The right was not clearly established at the time and under these circumstances**

Castro-Reyes can point to no precedent or materially similar opinion of the United States Supreme Court, the Eleventh Circuit Court of Appeal, or State of

30

Florida Supreme Court as of September 21, 2020, that clearly establishes in any fashion that Serrano's use of Taser, even repeated (and ineffective) use, violated constitutional rights. Likewise, Castro-Reyes cannot reasonably argue that failure to comply with these perceived obligations so obviously violates the Constitution that prior case law is unnecessary. *See* <u>Powell v. Snook</u>, 25 F.4th 912, 920 (11th Cir. 2022) (officer entitled to qualified immunity, decedent raising pistol toward officer not entitled to warning before officer's use of deadly force).

Castro-Reyes' allegations that Serrano unlawfully Tased him in the neck are not supported by legal authority. In <u>Alday v. Groover</u>, 601 F. App'x 775 (11th Cir. 2015), a trooper Tased a handcuffed, non-violent, passively resisting suspect in her neck for five to ten seconds when she refused to get out of patrol car at the jail sallyport. The Eleventh Circuit relied on Taser use precedent that repeated Taser use on a handcuffed, uncooperative plaintiff was not a constitutional violation, and determined that the trooper was entitled to qualified immunity.

Castro-Reyes' reliance on <u>Oliver v. Fiorino</u>, 586 F.3d 898 (11th Cir. 2009), a case in which officers repeatedly Tased a man while he was on the ground, is misplaced. In <u>Oliver</u>, the subject was far more compliant, certainly when compared to Castro-Reyes, whose family was forced to wrap him in rope and extension cords and who fought extensively with officers, exercising superhuman strength. In <u>Oliver</u>, when the initial officer on scene asked Oliver to stay and talk,

31

he walked toward her. *Id.* at 902. When she asked him to step away from her, he complied. *Id.* There was a brief moment when Oliver struggled and pulled away from the second officer on scene but nothing more. *Id.* Oliver did not hit, kick, punch, or threaten officers. *Id.* at 903. Nonetheless, one of the officers repeatedly Tased Oliver in five-second durations. *Id.* at 903.

Since <u>Oliver</u>, the Eleventh Circuit has repeatedly held that repeated Taser use on a <u>non</u>-compliant subject is <u>not</u> excessive force. *See* <u>Hoyt v. Cooks</u>, 672 F.3d 972 (11th Cir. 2012) (officers entitled to qualified immunity for lawful repeated Taser use on delusional subject who was lying on the ground and resisting officers' efforts to handcuff him and struggling and ignoring officers' commands). (*See also* argument and citations of authority in Argument, I.B.1 at pages 27-30, *supra*, regarding Taser use considered reasonable force.)

There is also no record evidence that Serrano continued to apply his Taser to Castro-Reyes *after* Plaintiff was successfully handcuffed.[13] The facts are clear that Serrano repeatedly used his Taser in a wholly unsuccessful effort to gain some sort of compliance from Plaintiff. Serrano looked for compliance from Plaintiff after each application of the Taser. (Declaration of Luis Serrano [Doc. 104-2], ¶ 33; *see also* Serrano Deposition [Docs. 107-2 and 119], 53:15-25, 59:1-7, 60:11-12, 61:17-

---

[13]    If Serrano had applied his Taser to Castro-Reyes after Castro-Reyes was fully handcuffed, this still would have been reasonable force. *See* <u>Buckley v. Haddock</u>, 292 Fed. Appx. 791, 795 (11th Cir. 2008) (Taser use on handcuffed, non-compliant suspect on the ground was reasonable).

62:6.)   The video evidence is clear that the Taser did not affect Castro-Reyes. Indeed, an officer can be heard on Serrano's body worn camera video saying "That's not working. No more Taser, Officer Serrano. That's not working."  *See* "Serrano (Taser) - 9.21.2020 [11 min 30 sec] [3399]" filed conventionally [Doc. 97] at 04:40-04:45.

Therefore, Serrano is entitled to qualified immunity.

## II.    Serrano is entitled to summary judgment based on statutory immunity regarding Appellee Castro-Reyes' state law claim of Assault and Battery

The District Court has supplemental jurisdiction over Castro-Reyes' state law claims of Assault and Battery as the Assault and Battery claim directly relates to whether Serrano used excessive force in assisting with the detention and handcuffing of Castro-Reyes.  *See* 28 U.S.C. 1367(a).  This Court has jurisdiction over Castro-Reyes' state law claim of Assault and Battery under the collateral order doctrine as Castro-Reyes has asserted state sovereign immunity under Fla. Stat. § 768.28.  *See e.g.*, Coleman v. Hillsborough Cnty., 41 F.4th 1319, 1324 (11th Cir. 2022) (granting officers summary judgment based on Fla. Stat. § 768.28 immunity).

Serrano is not entitled to state statutory immunity if he acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of

33

human rights, safety, or property. *See* Fla. Stat. § 768.28(9)(a) ("An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property…").

This statutory standard is an exceptionally high hurdle for Castro-Reyes to clear. "The phrase 'bad faith,' as used in § 768.28(9)(a), has been 'equated with the actual malice standard' [and] 'wanton and willful disregard of human rights [or] safety'…has been interpreted as 'conduct much more reprehensible and unacceptable than mere intentional conduct' and 'conduct that is worse than gross negligence'" Peterson v. Pollack, 290 So. 3d 102, 109 (Fla. 4th DCA 2020) (internal quotations omitted). "Actual malice" requires "ill will, hatred, spite, [or] an evil intent." Reed v. State, 837 So. 2d 366, 369 (Fla. 2002). The "wanton and willful disregard of human rights or safety" requires action be taken "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property" and "intentionally, knowingly and purposely." Peterson, 290 So. 3d at 109. Castro-Reyes can point to no record evidence that establishes that Serrano acted with "ill will, hatred, spite

34

[or] evil intent" in assisting officers in handcuffing and helping to take Castro-Reyes into safe custody.  Moreover, Castro-Reyes can point to no record evidence that Serrano acted with "intentional indifference to consequences" and "with the knowledge that damage is likely to be done" to Castro-Reyes.

Serrano has personally experienced being Tased as part of training: it hurts for up to five seconds. (Serrano Deposition [Docs. 107-2 and 119] 24:11-23.) Serrano explained "It hurts like a bee sting. It really hurts. It's discomforting." (Serrano Deposition [Docs. 107-2 and 119] 40:18–22.)  But Serrano's use of the Taser is a quick (albeit repetitious in this instance) event and is a preferred and lower-level use of force alternative to striking Castro-Reyes with blunt objects. Serrano testified at deposition "The next step is hit him with blunt objects and that was going to be really nasty."  (Serrano Deposition [Docs. 107-2 and 119] 59:10-11.)  In that light, and based on Serrano's own experience, Serrano's Taser use does not establish "ill will, hatred, spite, [or] an evil intent," or that Serrano acted with "intentional indifference to consequences" and "with the knowledge that damage is likely to be done" to Castro-Reyes.  To the contrary, Serrano's repeated Taser use was performed in an effort to safely control Castro-Reyes and *avoid* damage.  Therefore, Serrano is entitled to summary judgment regarding the Assault and Battery claim also.

## CONCLUSION

For the reasons discussed above, Serrano is entitled to qualified immunity as to Castro-Reyes' Excessive Force claim and to statutory immunity as to Castro-Reyes' state law Assault and Battery claim. As such, Appellant Luis Serrano respectfully requests that this Court reverse the District Court's denial of summary judgment to Serrano as to Count III for Excessive Force and Count IV for Assault and Battery.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.    This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 8,466 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2412 Build 16.0.18324.20044) 32-bit in Times New Roman 14 Font.

Respectfully submitted,

*/s/ Gail C. Bradford*
GAIL C. BRADFORD, ESQ.
Florida Bar No. 0295980
Dean, Ringers, Morgan & Lawton, P.A.
Post Office Box 2928
Orlando, Florida 32802-2928
Tel: 407-422-4310  Fax: 407-648-0233
gbradford@drml-law.com
Attorneys for Appellant Louis Serrano

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 20, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Gail C. Bradford*
GAIL C. BRADFORD, ESQ.

37

Florida Bar No. 0295980
Dean, Ringers, Morgan & Lawton, P.A.
Post Office Box 2928
Orlando, Florida 32802-2928
Tel:  407-422-4310   Fax:  407-648-0233
gbradford@drml-law.com
Attorneys for Appellant Luis Serrano