IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

CASE NO.: 24-12307-G

_____

SERGIO PEREZ
Appellant,

vs.

JAFET CASTRO-REYES
Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA, CASE NO.: 1:22-cv-21397-KMW

_____

**INITIAL BRIEF OF APPELLANT SERGIO PEREZ**

LOURDES ESPINO WYDLER, ESQUIRE
Florida Bar No. 719811
LAUREN D. MARTIN, ESQUIRE
Florida Bar No. 1034166

WYDLER LAW
Douglas Centre, PH-4
2600 Douglas Road
Coral Gables, FL 33134
Telephone: (305) 446-5528

**ATTORNEYS FOR APPELLANT SERGIO PEREZ**

## APPELLANT'S CERTIFICATE OF INTERESTED PERSONS

CASE NO.: 24-12307-G

Appellant, SERGIO PEREZ, by and through undersigned counsel, pursuant to the Eleventh Circuit Rule 26.1-1 states the following is an alphabetical list of the trial judge, attorneys, persons, firms, partnerships, and corporations with any known interest in the outcome of this appeal:

Bosque, German – Appellant/Defendant

Bradford, Gail C. – Counsel for Appellant/Defendant, Serrano

Dean, Ringers, Morgan and Lawton, P.A. – Counsel for Appellant/Defendant, Serrano

Dos Santos, Johan Daniel – Counsel for Appellee/Plaintiff, Castro-Reyes

Espino Wydler, Lourdes – Counsel for Appellant/Defendant, Sergio Perez

Florida League of Cities – Interested Party, Corporation administering the Florida Municipal Insurance Trust

Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A. – Counsel for Appellants/Defendants, Bosque and Kelly

Kelly, Daniel – Appellant/Defendant

Kuehne, Benedict P. – Counsel for Appellee/Plaintiff, Castro-Reyes

Kuehne Davis Law, P.A. – Counsel for Appellee/Plaintiff, Castro-Reyes

Martin, Lauren D. – Counsel for Appellant/Defendant, Sergio Perez

Michael J. Pizzi, Jr., P.A. – Counsel for Appellee/Plaintiff, Castro-Reyes

Pizzi, Jr., Michael A. – Counsel for Appellee/Plaintiff, Castro-Reyes

Perez, Sergio – Appellant/Defendant

Railey, Jonathan H. – Counsel for Appellants/Defendants, Bosque and Kelly

Serrano, Louis – Appellant/Defendant

Stearns, Jr., Christopher J. – Counsel for Appellants/Defendants, Bosque and Kelly

Williams, Kathleen M. – United States District Judge, Southern District of Florida

Wydler Law – Counsel for Appellant/Defendant, Sergio Perez

Dated: <u>December 20, 2024</u>

BY  <u>  /s/ *Lourdes Espino Wydler*  </u>
LOURDES E. WYDLER
LAUREN D. MARTIN

# INTRODUCTION

In his Initial Brief, Appellant, SERGIO PEREZ, will be referred to as "Perez". The Appellee, JAFET CASTRO-REYES, will be referred to as "Plaintiff" or "Castro-Reyes".

References to the Record will be made in accordance to Eleventh Cir. R. 28-5 and Fed. R. App. P. 28(e).  References to the record shall be to Southern District docket entry number and page number: (D.E. #, p.). Any other document not assigned a docket entry number will be referred to by its title.

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant, SERGIO PEREZ, respectfully requests oral argument because this case involves important Fourth Amendment issues based on qualified immunity for law enforcement officers in rapidly-evolving circumstances. 11th Cir. R. 28-1(c); 11th Cir. R. 34-3(c). Participation in oral argument will be beneficial, and the decisional process will be significantly aided by this Court's grant of oral argument.

## TABLE OF CONTENTS

APPELLANT'S CERTIFICATE OF INTERESTED PERSONS ........................... 1

INTRODUCTION ................................................................................. i

STATEMENT REGARDING ORAL ARGUMENT ............................................ ii

TABLE OF CONTENTS ........................................................................ iii

TABLE OF CITATIONS ........................................................................ v

STATEMENT OF JURISDICTION .......................................................... ix

STATEMENT OF THE ISSUES .............................................................. 1

STATEMENT OF THE CASE ................................................................. 2

   *I. Course of Proceedings and Disposition in the District Court* ........................... 2

   *II. Statement of the Facts* ................................................................. 3

   *III. Standard of Review* ................................................................... 9

SUMMARY OF THE ARGUMENT ......................................................... 11

ARGUMENT .................................................................................... 12

  I. THE DISTRICT COURT ERRED IN FINDING THE FORCE USED BY PEREZ WAS NOT REASONABLE UNDER THE CIRCUMSTANCES. ... 12

  II. THE DISTRICT COURT ERRED IN DENYING QUALIFIED IMMUNITY AS TO PEREZ'S USE OF FORCE WHEN INJURED BY AN UNSECURED SUBJECT. ................................................................................. 23

  A. A Reasonable Officer Would Perceive Castro-Reyes's Behavior as Active Resistance. ................................................................................. 25

B. There is No Clearly Established Right to be Free From Defensive Discretionary Strikes to Protect Oneself from Injury During Resistance.................................28

C. There is No Clearly Established Right to be Free from Being Pulled to Location Where Officers Can Properly Secure Actively Resisting Subject. ..................31

CONCLUSION ........................................................................................................33

CERTIFICATE OF COMPLIANCE .......................................................................34

CERTIFICATE OF SERVICE ................................................................................35

# TABLE OF CITATIONS

**Cases**                                                                              **Page**

*Acosta v. Miami-Dade Cnty.*, 97 F.4th 1233 (11th Cir. 2024) ........................ 27, 28

*Adkins v. Christie*, 488 F.3d 1324 (11th Cir. 2007) ................................................ ix

*Alston v. Swarbrick*, 954 F.3d 1312 (11th Cir. 2020) ............................................ 27

*Anderson v. Creighton*, 483 U.S. 635 (1987) ........................................................ 24

*Andrews v. Marshall*, 845 F. App'x 849 (11th Cir. 2021) ...................................... 31

*Barts v. Joyner*, 865 F.2d 1187 (11th Cir. 1989) .................................................. 24

*Burkett v. Alachua Cnty.*, No. 1:03-CV-00103-MP-AK, 2006 WL 2128672 (N.D. Fla. July 27, 2006), *aff'd*, 250 F. App'x 950 (11th Cir. 2007) .............................. 15

*Bussey-Morice*, 587 Fed. Appx. 621 (11th Cir. 2014)..................................... 28, 32

*Butler v. Blitch*, 2020 WL 1065118 (M.D. Fla. Mar. 5, 2020), *aff'd sub nom. Butler v. Sec'y, Fla. Dep't of Corr.*, 2021 WL 4279555 (11th Cir. Sept. 21, 2021) ......... 19

*Butler v. Sec'y, Fla. Dep't of Corr.*, 2021 WL 4279555, (11th Cir. Sept. 21, 2021), *cert. denied sub nom. Butler v. Dixon*, 142 S. Ct. 1213 (2022) ............................. 20

*Callwood v. Jones*, 727 F. App'x 552 (11th Cir. 2018) ......................................... 19

*Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313 (11th Cir. 2005) .................. ix

*Dartland v. Metropolitan Dade County,* 866 F.2d 1321 (11th Cir. 1989) ............ 25

*Dolihite v. Maughon By and Through Videon,* 74 F.3d 1027 (11th Cir. 1996) ...... 9

*Ensley v. Soper*, 142 F.3d 1402 (11th Cir. 1998) .................................................... 9

*Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997) ................................. 26

| Cases | Page |
|---|---|

*Fluellen v. City of Plant City*, No. 8:16-CV-335-T-23AEP,
2016 WL 6729538, at *1 (M.D. Fla. Nov. 15, 2016) ............................................ 31

*Flowers v. City of Melbourne*, 2013 WL 12098771 (M.D. Fla. Aug. 21,
2013), *aff'd,* 557 F. App'x 893 (11th Cir. 2014) ................................................. 33

*Garczynski v. Bradshaw*, 573 F.3d 1158 (11th Cir. 2009) ................................... 24

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................. 12, 13, 14

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ...................................................... 23, 24

*Hinson v. Bias*, 927 F.3d 1103 (11th Cir. 2019) ......................................... 12, 25, 29

*Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) ........... 26

*Howe v. City of Enter.*, 861 F.3d 1300 (11th Cir. 2017) ...................................... ix

*Hoyt v. Cooks,* 672 F.3d 972 (11th Cir. 2012) ....................................................... 24

*Ingram v. Kubik*, 30 F.4th 1241 (11th Cir. 2022) ................................................. 14

*Johnson v. Conway*, 688 F. App'x 700 (11th Cir. 2017) ....................................... 24

*Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) ................................................... 12

*Lewis v. City of Marietta*, No. 1:21-CV-01883-ELR, 2022 WL 19002539, at *13
(N.D. Ga. Dec. 19, 2022), *reconsideration denied*, No. 1:21-CV-01883-ELR, 2023
WL 2455423 (N.D. Ga. Jan. 23, 2023), *appeal dismissed*, No. 23-10614-GG, 2023
WL 3605333 (11th Cir. Apr. 7, 2023), and *appeal dismissed*, No. 23-10614-GG,
2023 WL 3605333 (11th Cir. Apr. 7, 2023) ......................................................... 19

*Marantes v. Miami-Dade Cty.*, 776 F. App'x 654 (11th Cir. 2019) ...................... 29

*Martinez v. Palm Bay Police Dep't*, 2006 WL 1933812, at *1
(M.D. Fla. July 11, 2006)................................................................................. 14, 23

**Cases**                                                                              **Page**

*Miles v. Jackson*, 2017 WL 1157894, at *1 (N.D. Fla. Feb. 22, 2017), *report and recommendation adopted*, 2017 WL 1146949 (N.D. Fla. Mar. 27, 2017), *aff'd*, 757 F. App'x 828 (11th Cir. 2018) ................................................................. 21, 30, 32

*Mobley v. Palm Beach Ct. Sheriff Dep't*,
783 F.3d 1347 (11th Cir. 2015) ............................................................. 18, 19, 22

*Parris v. Town of Alexander City*, 45 F. Supp. 2d 1295 (M.D. Ala. 1999) ........... 17

*Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993) ...................... 24, 25

*Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) ........... 10

*Sosa v. Hames*, 581 F. Supp. 2d 1254, 1277 (S.D. Fla. 2008) ............................. 31

*Stanley v. City of Dalton, Ga.,* 219 F.3d 1280 (11th Cir. 2000) ........................ ix, 9

*Stryker v. City of Homewood*, No. 2:16-CV-0832-VEH, 2017 WL 3191097, at *1 (N.D. Ala. July 27, 2017) .............................................................. 31

*Taylor v. Taylor*, 649 F. App'x 737 (11th Cir. 2016) ............................................ 12

*Terrell v. Smith*, 668 F.3d 1244 (11th Cir. 2012) .................................................. 24

*Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002) .............................................. 23

*White v. Knight*, 2017 WL 4277162, at *1 (M.D. Fla. Sept. 25, 2017) ................. 33

*Whitner v. Moore*, 160 F. App'x 918, 920 (11th Cir. 2005) .................................. 26

*Wood v. Kesler*, 323 F.3d 872 (11th Cir. 2003) .................................................... 24

**Statutes**                                                                          **Page**

42 U.S.C. § 1983 ................................................................... ix, 1, 2, 23

28 U.S.C. § 1291 .......................................................................................... ix

| Rules | Page |
|---|---|

11th Cir. R. 26.1-1 ........................................................................... C-1 of 2

Fed. R. App. P. 28 ................................................................................. i

Fed. R. App. P. 32 ............................................................................... 34

# <u>STATEMENT OF JURISDICTION</u>

This action was brought pursuant to 42 U.S.C. §1983. The Court has jurisdiction pursuant to 28 U.S.C. § 1291 to review the Order Denying Defendants' Motion for Summary Judgment from the United States District Court for the Southern District of Florida. As a matter of law, any order denying qualified immunity based on a mixed question of law and fact is subject to an interlocutory appeal. *Adkins v. Christie*, 488 F.3d 1324, 1327 (11th Cir. 2007). When an interlocutory appeal raises both sufficiency of the evidence and clearly established law issues, as this appeal does, this Court has jurisdiction to entertain both issues. *Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313, 1315–16 (11th Cir. 2005) (citing *Stanley v. City of Dalton, Ga.,* 219 F.3d 1280, 1286 (11th Cir. 2000). Moreover, the denial of a motion for summary judgment without prejudice that raises the qualified immunity defense is sufficiently final to maintain jurisdiction over an interlocutory appeal. *Howe v. City of Enter.*, 861 F.3d 1300, 1302 (11th Cir. 2017).

The District Court Omnibus Order denying in part the Appellant's Motion for Summary Judgment was entered on June 17, 2024. (D.E. #159). The Appellant, SERGIO PEREZ, timely filed a Notice of Appeal on July 16, 2024. (D.E. #162).

## <u>STATEMENT OF THE ISSUES</u>

I.      Whether the denial of summary judgment should be reversed in favor of Perez in § 1983 claim because reasonable force was utilized under the circumstances to subdue the resisting actions of Castro-Reyes.

II.     Whether qualified immunity was incorrectly denied because a reasonable officer under the same circumstances would believe Castro-Reyes was actively resisting, and thus, would need to use physical force to free his dominant hand from being injured as a result of Castro-Reyes's resistance and to secure Castro-Reyes in handcuffs without further incident given Castro-Reyes's refusal to comply with officer commands.

III.    Whether the alleged illegality of Perez's actions were clearly established at the time of the incident.

## STATEMENT OF THE CASE

### I.    *Course of Proceedings and Disposition in the District Court*

The initial Complaint was filed in the United States District Court for the Southern District of Florida on May 4, 2022. (D.E. #1). Subsequent to Perez filing a Motion to Dismiss (D.E. #21), Castro-Reyes voluntarily filed an Amended Complaint in the District Court on December 31, 2022. (D.E. #48). Perez, Bosque, and Serrano filed a Joint Motion to Dismiss the Amended Complaint. (D.E. #53). The District Court denied the Joint Motion to Dismiss on July 20, 2023. (D.E. #90). The Defendants filed their Answers and Affirmative defenses. (D.E. ## 93-96).

In relevant part[1], Castro-Reyes asserted two causes of action against Perez: Count III for excessive force under 42 U.S.C. § 1983 and Count IV for state law assault and battery. (D.E. #48). Perez moved for summary judgment on August 18, 2023. (D.E. ## 105-106, 108). On June 17, 2024, the District Court entered an Omnibus Order denying Perez's Motion for Summary Judgment as to Plaintiff's excessive force and assault and battery claims. (D.E. #159). Appellants Perez, Serrano, Bosque, and Kelly timely filed a Notice of Appeal on July 16, 2024. (D.E. #162).

---

[1] The other remaining claims brought against Perez for unlawful entry (Count I) and false arrest (Count II) under 42 U.S.C. §1983 as well as a state claim for false imprisonment (Count V) were disposed of below in his favor. (D.E. #159). All facts related to those claims are therefore not addressed herein for the sake of brevity.

II.    *Statement of the Facts*

This appeal arises out of a civil rights action brought by the Plaintiff/Appellee Jafet Castro-Reyes, against Defendant/Appellant, Sergio Perez. (D.E. #48). For purposes of this appeal, Castro-Reyes alleges that Perez utilized excessive force and committed assault and battery during the encounter on September 21, 2020. Specifically, two instance of force are at issue: (1) Perez striking Plaintiff three times in order to release his dominant hand from Plaintiff's grip; and, (2) Perez pulling Castro-Reyes outside by his pants/ankles in order to remove him from the slippery floor and secure him in handcuffs. (D.E. #159). It is undisputed that all responding officers, including Bosque, Perez, Serrano, and Kelly, were acting in their official capacity as City of Opa-Locka employees. (D.E. #159, pg. 9). The entire encounter is captured on police body-worn camera ("BWC") footage, and there has been not challenge to the veracity or completeness of the BWC videos. (D.E. #87, 92, 97).[2]

### Plaintiff's Behavior Prior to Officer Arrival

According to Plaintiff's family members and close friends, on September 1, 2020, Castro-Reyes, who was living alone at 2544 York Street, Apartment 3, threw all of his furniture away, and stated he wanted to "cleanse his life" and begin a new life. (D.E. #159, pg. 2). His family described him as "unrecognizable" and believed

---

[2] Eight (8) videos were conventionally filed with the United States District Court Clerk with the Court's permission for inclusion in the record. *See* D.E. ## 87, 92, 97.

he was "not well" and blocked the door to prevent him from leaving the apartment out of concern for Castro-Reyes's safety. (D.E. #159, pg. 2). His family attempted to tie Castro-Reyes's hands and feet with electrical wires. (D.E. #159, pg. 3). After a period of time observing this "odd" behavior (D.E. # 86-1, pg. 22; D.E. #86-2, pgs. 29, 32; D.E. #88-1, pg. 20), the family decided to call 911. (D.E. #159, pg. 3).

### *Initial Responding Officers Kelly and Bosque Arrive on Scene*

Bosque and Kelly were dispatched to 2544 York Street, Apartment 3 in reference to a violent adult male who was possibly high and being violent toward his family members. (D.E. #159, pg. 3; D.E. #105-4, pgs. 3, 10, 13). When they arrived, it was raining. (D.E. #97). Outside of the apartment, they encountered Castro-Reyes's cousin, Josue Varela, who appeared concerned, began explaining the situation with the Plaintiff, and led them into the apartment of which the door was wide open. (D.E. #159, pg. 3; D.E. #97). Mr. Varela further advised Bosque and Kelly that Castro-Reyes was tied up because he was acting strangely. (D.E. #159, pg. 3). When Bosque and Kelly entered the residence, the floor was "completely wet" and Castro-Reyes lay on the ground with his hands, legs, and ankles tied with electrical wires and cords. (D.E. #159, pg. 3).

Bosque and Kelly decided to handcuff Castro-Reyes in order to control the scene and secure him for the safety of themselves and others. (D.E. #159, pg. 4; D.E. #105-2, pgs. 4, 6). Castro-Reyes posed a danger to himself and/or others. (D.E. #105-

2, pgs. 7, 9). Upon attempting to secure him, he became very combative and violently resisted. (D.E. #105-4, pgs. 3, 13). Due to the slippery floor and the Plaintiff's active resistance, the Officers, even with the assistance of Plaintiff's cousin, were unable to flip Plaintiff over to secure and restrain him. (D.E. #159, pgs. 4-5; D.E. #97). Kelly was only able to place a handcuff on one of Castro-Reyes's wrists. (D.E. #159, pgs. 4-5). Bosque then called for additional (backup) officers for assistance. (D.E. #159, pg. 5; D.E. #105-4, pg. 10; D.E. #97). The dispatcher advised that the subject was a "violent male". (D.E. #159, pg. 5). Castro-Reyes is repeatedly heard saying in Spanish "I am God" throughout the encounter. (D.E. #159, pg. 4; D.E. #97).

### Additional Back-up Officers Arrive on Scene

Perez along with other officers, including Serrano, arrived on scene in response to the emergency request for backup. (D.E. #105-4, pgs. 6-13). Perez, who held the rank of lieutenant at the time of the incident, became the commanding officer at the scene upon arrival. (D.E. #159, pg. 5 at n.3). The dispatcher advised the backup officers that Castro-Reyes was potentially violent and resisting arrest. (D.E. #159, pg. 5). The backup officers were not given the facts underlying the original request for police assistance, nor were they told that they were possibly dealing with a mentally ill individual. (D.E. #159, pg. 5). At no point prior to the back-up officers' arrivals had Officers Kelly or Bosque notified the additional officers of any intention to Baker Act Plaintiff. (D.E. #97; D.E. #105-5, pgs. 8-9).

Upon their arrival, Bosque told the backup officers that Castro-Reyes was "overpowering" them. (D.E. #159, pg. 5). It was a very chaotic scene. (D.E. #97; D.E. #105-5, pg. 19). Mr. Varela was immediately removed from proximity to Castro-Reyes. (D.E. #159, pg. 6). At that time, only one of Appellee's hands was in handcuffs. (D.E. #97; D.E. #159, pg. 4-5). He repeatedly refused to comply with the officers' verbal commands to "put your hands behind your back" and to flip over or turn around. (D.E. #97). Despite multiple TASER deployments by Serrano in an attempt to gain Castro-Reyes's compliance, multiple officers were unable to secure him in handcuffs due, in part, to the slippery floor and Plaintiff "over powering" them. (D.E. #159, pg. 6; D.E. #97).

During the struggle to subdue Castro-Reyes, Perez's hand became pinned by the handcuff on Plaintiff. (D.E. #105-1, pg. 13).[3] The Appellee was not safely restrained when Perez utilized non-lethal force to subdue and secure Plaintiff. (D.E. #105-1, pgs. 8, 13). Given his active resistance and Plaintiff's control of Perez's dominant hand, Perez attempted to gain Plaintiff's compliance and release his dominant hand with "distractionary strikes". (D.E. #105-1, pgs. 2, 22; D.E. #159, pg. 6). Although Perez was able to release his hand, the strikes had no effect on Plaintiff's active resistance. (D.E. #105-1, pg. 21). Perez sustained scars from

---

[3] A fact wholly disregarded by the Court Order. *See generally*, D.E. #159.

lacerations to his right hand in two places which were photographed after the incident bleeding.[4] (D.E. #105-5, pg. 19; D.E. #105-1, pgs. 14-15; D.E. #105-8).

Castro-Reyes appeared to have "superhuman strength" preventing approximately ten (10) officers from getting him under control. (D.E. #105-1, pg. 21). Despite the various tactics utilized by the Officers, Castro-Reyes continued to actively resist their efforts in turning him over to secure him. (D.E. #105-1, pg. 21). Given Castro-Reyes's active resistance, the wet and slippery floor, and the Officers' ineffective tactics to secure him while inside the apartment, Perez removed him from the house by pulling him outside by his ankles and/or pants to avoid the administration of further force. (D.E. #159, pg. 7; D.E. #105-1, pgs. 16, 21).

As evidence of his continued resistance, Castro-Reyes held onto the doorframe with both hands for about five seconds, in an attempt to prevent the Officers from removing him from the residence. (D.E. #159, pg. 7; D.E. #86-2, pg. 57). With the assistance of other Officers, Perez was able to pull him to the front porch of the residence. (D.E. #97; D.E. #105-1, pg. 17). Perez believed that other Officers secured Castro-Reyes's head during the removal. (D.E. #105-1, pg. 17). During Perez's efforts to overcome Castro-Reyes's resistance, Plaintiff hit his head on the step. (D.E. #159, pg. 7). Despite continued active resistance, once outside,

---

[4] During the encounter with Castro-Reyes, Officers Vielman and Borrero also sustained lacerations to their hands. (D.E. #105-4, pgs. 7-8).

only then were the Officers able to flip Castro-Reyes over and secure him with handcuffs to both hands. (D.E. #159, pg. 8). Approximately eleven minutes elapsed from when the officers first arrived to when Plaintiff was restrained with handcuffs. (D.E. #159, pg. 8; D.E. #97).

### *Post Custodial Interaction and Investigation*

Plaintiff was transported to Jackson Memorial Hospital by Miami Dade Fire Rescue. (D.E. #159, pg. 8). (D.E. #105-4, pg. 3). Castro-Reyes testified at his deposition that he could not recall any of the events leading up to his hospital stay, nor much after the fact. (D.E. #159, pg. 9; D.E. # 86-4, pgs. 11, 55). For example, he does not remember what injuries he sustained, nor does he remember how many days he was in the hospital. (D.E. #159, pg. 9). However, evidence of alcohol and drug consumption was later recovered, including Castro-Reyes admitting to drinking Four Loko and having taken drugs, as evidenced by the BWC footage. (D.E. #105-4, pgs. 7; D.E. #105-5, pgs. 12, 24; D.E. #97).

Due to the level of resistance and several officers receiving minor visible injuries, documentation for an arrest was initiated. (D.E. #105-1, pgs. 9-12, 7). Perez believed Castro-Reyes obstructed justice by resisting lawful detention. (D.E. #105-1, pgs. 4-6). However, Castro-Reyes was never arrested for the incident. (D.E. #105-1, pgs. 9-12). In accordance with Opa-locka Department policy, Perez completed a Control of Persons and an OI Report. (D.E. #105-6, pg. 3).

Pursuant to Opa-locka Police Department policies:

"Police officers, as part of their duties, may have to use various degrees of force, up to and including deadly force, on persons that are being placed under arrest, being brought under control, displaying threatening behavior or attacking an officer or other person. It is the policy of the Opa-locka Police Department that officers shall use only that force necessary to effect an arrest, defend themselves or others, and/or to cause the person to cease their behavior and be compliant with the officer's commands. Officer shall only use those firearms, defensive tactics and/or less lethal weapons as authorized by the Department in the course of their duties. Officer may have to use defensive tactics, use of their hands and/or feet, to gain control of a subject that is resisting the officer, being brought under control or attacking the officer or others."

(D.E. #105-6, pgs. 1, 3). Physical control is defined as "achieving compliance or custody through the use of empty-hand or leverage-enhanced techniques, such as pain compliance, transporters, restraint devices, takedowns, and striking techniques." (D.E. #105-6, pg. 7). Of the permitted officer response options, physical control is considered the least amount of force. (D.E. #105-6, pgs. 6-7).

## III.    *Standard of Review*

A district court's denial of a defendant's motion for summary judgment on the basis of qualified immunity is reviewed *de novo. Ensley v. Soper*, 142 F.3d 1402, 1406 (11th Cir. 1998) (citing *Dolihite v. Maughon By and Through Videon,* 74 F.3d 1027, 1040 (11th Cir. 1996). When an appeal of the denial of qualified immunity raises a mixed question of law and fact, the appellate court is permitted to make an independent analysis of the facts at issue. *Stanley*, 219 F.3d at 1287.

Furthermore, when there is video evidence of the incident at issue, that video evidence should be considered and given appropriate weight, more so when it is the only, uncontroverted, real-time, record evidence of what actually happened. *See Scott v. Harris*, 550 U.S. 372, 380-381, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007) (while court is required to view facts in light most favorable to nonmovant where there is genuine dispute as to facts, court should not rely on "visible fiction" but should rely on facts shown in video).

## SUMMARY OF THE ARGUMENT

The denial of qualified immunity should be reversed. The only two (2) issues on appeal related to Perez's use of force are: (1) three consecutive distractionary strikes utilized on a non-compliant subject who had his dominant hand pinned down with the handcuff, causing injuries to Perez's hands; and (2) removing Castro-Reyes outside of the slippery apartment in order to secure both of Castro-Reyes hands in handcuffs.

Pursuant to related precedent, no constitutional violation occurred during the utilization of force given the apparent active resistance of Castro-Reyes. Even assuming, active resistance cannot be established as a matter of law, a reasonable officer in Perez's position could reasonably believe that Castro-Reyes was actively resisting detention. Thus, Perez is entitled to qualified immunity given there was no clearly established violation of Castro-Reyes's right to be free from unnecessary force when he caused Perez's hand injuries and it is undisputed the Castro-Reyes held on to the door frame to prevent Perez from taking him outside in order to finally secure him and the scene.

## ARGUMENT

## I.   THE DISTRICT COURT ERRED IN FINDING THE FORCE USED BY PEREZ WAS NOT REASONABLE UNDER THE CIRCUMSTANCES.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citation omitted); *see also* (D.E. #159, pg. 18). "The Fourth Amendment's 'objective reasonableness' standard governs our inquiry.*" Hinson v. Bias*, 927 F.3d 1103, 1117 (11th Cir. 2019); *see also* (D.E. #159, pg. 18). Under this standard, the reasonableness of the officer's conduct "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Graham*, 490 U.S. at 396). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.*; *see also* (D.E. #159, pg. 18). Some use of force in order to subdue a suspect is "necessary and altogether lawful" no matter the alleged offense. *See Taylor v. Taylor*, 649 F. App'x 737, 746 (11th Cir. 2016).

To determine reasonableness or to balance the necessity of the use of force used against the individual's constitutional rights, a court must evaluate several factors, including the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also* (D.E. #159, pgs. 18-19). The court's analysis must "embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

The District Court found that,

> Mr. Castro-Reyes had not committed any crime, was bound by his legs and ankles at all relevant times, was partially handcuffed for nearly the entire encounter, and never struck or attempted to strike anyone. Although Mr. Castro-Reyes did not immediately obey commands to turn over, it is unclear whether he was physically or mentally capable of doing so. Similarly, it is unclear whether he was, at all times, actively avoiding arrest; whether his body was being pulled in different directions by the numerous officers on scene; or whether he was having involuntary physical spasms due to Defendant Serrano's repeated use of his taser[5].

(D.E. #159, pg. 19). The fact that there was not a crime at issue when the officers initially responded to Plaintiff's apartment does not undermine the first factor. When Perez arrived, he was responding to an emergency call for back up and it appeared that Plaintiff was resisting the officers and not complying with officer commands.

---

[5] The video footage depicts the same motion both before and after the taser. Therefore, it is not reasonable to conclude that the motions of active resistance are a result of the taser, especially when considering the phrases shouted by the Plaintiff. Moreover, Castro-Reyes can be seen clenching his fists and forcibly (as is evident via the veins popping out in his arms) attempting to bring his hands to his chest.

(D.E. #105-4, pg. 9; D.E. #159, pg. 5). Perez believed Plaintiff obstructed justice by resisting lawful detention. (D.E. #105-1, pgs. 4-6). In addition, although it was unknown to Perez at the time of the events subject to this matter (D.E. #105-5, pgs. 8-9), "police officers must take persons into custody when they appear to fulfil the Baker Act criteria. *Martinez v. Palm Bay Police Dep't*, 2006 WL 1933812, at *7 (M.D. Fla. July 11, 2006); *see also* (D.E. #159, pg. 16).

With respect to the second and third *Graham* factors, the record evidence reveals that Castro-Reyes posed a threat to himself, his relatives, and the officers on scene (D.E. #159, pgs. 2-5; D.E. #105-2, pgs. 4, 6, 7, 9; D.E. #97), made evident by his family preventing him from leaving the residence and his behavior at the scene, including his active resistance and overpowering strength. *See Martinez*, 2006 WL 1933812 at *7-8. The Court improperly relies on the "unclear" nature of Appellee's active resistance. (D.E. #159, pgs. 4, 6, 7). While it is possible that Castro-Reyes was unable to comply with the officers' demands, a reasonable officer, who arrived to a chaotic scene and having been informed by the dispatcher that the subject was violent and possibly high on narcotics, may have reasonably believed Plaintiff's resistance was intentional. (D.E. #159, pg. 5; D.E. #105-5, pg. 19; D.E. #97). "The inquiry into whether an individual is resisting requires examining the exact moment when the force is utilized." (D.E. #159, pg. 19) (citing *Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022)).

In the instant matter, the backup officers, including Perez, arrived to a chaotic scene in response to the emergency request for officer assistance. (D.E. #105-4, pgs. 6-13; D.E. #159, pg. 5; #105-5, pg. 19; D.E. #97). They saw what appeared to be two police officers struggling with two male individuals. (D.E. #105-4, pg. 9). At that time, Castro-Reyes was not securely restrained by handcuffs. (*Id.*, pg. 16). He actively resisted the Officers' efforts to secure him and refused to comply with the officers attempting to restrain him while shouting in Spanish. (D.E. #105-4, pgs. 3, 12-13, 16; D.E. #97). Given the completely wet and slippery floor inside the apartment and Castro-Reyes's apparent "superhuman" strength, Plaintiff was able to "overpower" the officers. (D.E. #105-1, pg. 21; D.E. #159, pgs. 4-6). Plaintiff repeatedly refused to comply with the officers' verbal commands to "put your hands behind your back" and to turn over. (D.E. #97; D.E. #159, pg. 19).

In *Burkett*, the plaintiff "forcibly resisted the officers' attempts to transport him, severely injuring an officer in the process." *Burkett v. Alachua Cnty.*, 2006 WL 2128672, at *6 (N.D. Fla. July 27, 2006), *aff'd*, 250 F. App'x 950 (11th Cir. 2007). The Court concluded that "given "the officers unsuccessfully attempted to restrain him using ordinary physical means," the officers' "actions [including pinning him down and using a stun gun] were reasonable in light of the circumstances." *Id.* at *7. (finding there was no need "to address the issue of qualified immunity in this case, as the evidence fails to indicate that a constitutional violation has occurred").

Pursuant to Opa-locka Police Department policies, "Police officers, as part of their duties, may have to use various degrees of force, up to and including deadly force, on persons that are being placed under arrest, being brought under control, displaying threatening behavior or attacking an officer or other person. It is the policy of the Opa-locka Police Department that officers shall use only that force necessary to effect an arrest, defend themselves or others, and/or to cause the person to cease their behavior and be compliant with the officer's commands. Officer shall only use those firearms, defensive tactics and/or less lethal weapons as authorized by the Department in the course of their duties." (D.E. #105-6, pgs. 1, 3). "Officer may have to use defensive tactics, use of their hands and/or feet, to gain control of a subject that is resisting the officer, being brought under control or attacking the officer or others." (*Id*.). Physical control is defined as "achieving compliance or custody through the use of empty-hand or leverage-enhanced techniques, such as pain compliance, transporters, restraint devices, takedowns, and striking techniques." (*Id*., pg. 7). Of the permitted officer response options, physical control is considered the least amount of force. (D.E. #105-6, pgs. 6-7).

The District Court's ruling ignored the incontrovertible facts concerning the injuries sustained to Perez's hand which forced Perez to utilize the defense tactics of discretionary strikes pursuant to Opa-locka Police Department policies; thus,

addressing whether the conduct served a legitimate law enforcement purpose including ensuring his safety and the safety of his fellow subordinate officers.

During the struggle to subdue Plaintiff, Perez's hand became pinned by the handcuff on Plaintiff. (D.E. #105-1, pg. 13). Although Appellee may not have intentionally kicked, punched, or struck Perez, as alleged by Castro-Reyes, Appellee does not dispute that Perez's dominant hand became pinned as a result of Castro-Reyes's active resistance or that several officers, including Perez, sustained lacerations during the encounter. (D.E. #106 at ¶¶ 15, 24; D.E. #129 at ¶¶ 15, 24); *see also e.g. Parris v. Town of Alexander City*, 45 F. Supp. 2d 1295, 1303 (M.D. Ala. 1999) (finding that "even if [p]laintiff had no intent to injure the officer, and was merely trying to escape, it was not objectively unreasonable for the officers to believe that they were responding to an aggravated assault against a police officer, given plaintiff had already injured an officer with his vehicle). Furthermore, Castro-Reyes does not dispute that given Castro-Reyes's active resistance and his control of Perez's dominant hand, Perez attempted to gain his compliance and release his dominant hand with "distractionary strikes". *Id*. Although Perez was able to release his hand, the strikes had no effect on Plaintiff's active resistance. (D.E. #105-1, pg. 21).

The officers' collective administration of non-lethal force, including multiple deployments of a Taser and "distractionary strikes" were ineffective to gain

compliance. (D.E. #105-1, pg. 21; D.E. #97). Despite the various tactics utilized by the Officers, Plaintiff continued to actively resist their efforts in turning him over to secure him. *Id*. Due to the Officers' prolonged struggle to handcuff Plaintiff, Perez, who became the commanding officer of the scene upon arrival (D.E. #159, pg. 5, n.3) removed Plaintiff from the apartment by pulling him outside by his feet and/or clothing in order to safely place Plaintiff into custody and avoid the administration of further force. (D.E. #105-1, pg. 21). Plaintiff held onto the doorframe with both hands in an attempt to prevent the Officers from removing him from the residence. (D.E. #159, pg. 7; D.E. #86-2, pg. 57). With the assistance of other Officers, Perez was able to pull him to the front porch of the residence. D.E. #97; D.E. #105-1, pg. 17). Perez believed that other Officers secured Plaintiff's head during the removal of Plaintiff. *Id.*

### A. The Physical Force Used by Perez was Not Excessive as a Matter of Law

Fourth Amendment jurisprudence in the Eleventh Circuit has long recognized that "force applied while the suspect has not given up and stopped resisting and may still pose a danger to the arresting officers, even when that force is severe, is not necessarily excessive." *Mobley v. Palm Beach Ct. Sheriff Dep't*, 783 F.3d 1347, 1356 (11th Cir. 2015) (emphasis in original). The "dividing point between excessive and non-excessive force" turns on "whether the suspect is completely restrained or

otherwise resisting arrest." *Callwood v. Jones*, 727 F. App'x 552, 559 (11th Cir. 2018) (citing *Mobley,* 783 F.3d at 1356).

As it pertains to Perez, Appellee claims that Perez used excessive force when he "used a closed fist on Castro's face while Castro is tied up, handcuffed[6]" (D.E. # 48 at ¶ 97] and "dragg[ed] [him] from the inside of his home" [D.E. #48 at ¶ 82]. Castro-Reyes's "continued resistance necessitated this additional use of brief, intermediate force so that the Defendant Officers could secure him in handcuffs and thereby secure the safety of the Defendant Officers and nearby onlookers." *See Lewis v. City of Marietta*, 2022 WL 19002539, at *13 (N.D. Ga. Dec. 19, 2022), *reconsideration denied*, 2023 WL 2455423 (N.D. Ga. Jan. 23, 2023), *appeal dismissed*, No. 23-10614-GG, 2023 WL 3605333 (11th Cir. Apr. 7, 2023), and *appeal dismissed*, No. 23-10614-GG, 2023 WL 3605333 (11th Cir. Apr. 7, 2023) (finding four quick strikes delivered to the plaintiff's head once he was on the ground were reasonable given plaintiff's continued struggle against being handcuffed and refusal to turn on his stomach as commanded by the defendant officers). The following cases are instructive in determining such behavior is not excessive.

In *Butler v. Blitch*, the force extraction team utilized organized physical force to bring an inmate into compliance given inmate's refusal to submit to handcuffing

---

[6] The record, including the video recording makes clear that Plaintiff was not secured by handcuffs until after he was removed from the apartment. (D.E. #97; D.E. #159, pg. 8).

after the doctor ordered for inmate to be placed on SHOS Status due to his suicidal gestures. 2020 WL 1065118, at *2 (M.D. Fla. Mar. 5, 2020), *aff'd sub nom. Butler v. Sec'y, Fla. Dep't of Corr.*, 2021 WL 4279555 (11th Cir. Sept. 21, 2021). This included several "distractionary blows" with handcuffs in hand to inmate's forearm in a successful attempt to break his grasp of the shower bars and an additional closed fist strike resulting in inmate relinquishing his grasp of sergeant's shirt. *Id*. The Court awarded summary judgment in favor of prison officials given all force ceased once the inmate was fully restrained with handcuffs and the "punches" as seen on the video, did not appear to be intended to deliver harm. *Id*. at *6; *see also Butler v. Sec'y, Fla. Dep't of Corr.*, 2021 WL 4279555, at *3 (11th Cir. Sept. 21, 2021), *cert. denied sub nom. Butler v. Dixon*, 142 S. Ct. 1213 (2022) ("In the video recording, the punches appear small and targeted, in an effort to get Butler to comply with the officers' orders."). The Court further concluded that the prison officials "were justified in using force … to obtain [p]laintiff's compliance with the order to submit to hand restraints, and that, at worst, [p]laintiff received minimal injuries consistent with the amount of force which was necessary to restrain him." *Id*.

The District Court Order suggests that an issue of material fact exists because Bosque asked Perez to stop. (D.E. #159, pg. 21). However, there is no indication in the record evidence that Bosque was aware that Perez's hand was pinned down by Castro-Reyes and the single handcuff was hurting Perez's dominant hand. Moreover,

upon arrival to the scene, Perez became commanding officer and was not required to follow the commands of Bosque. (D.E. #159, pg. 5 at n.3).

Specific to the removal of Castro-Reyes, in *Miles v. Jackson*, an inmate claimed officers used excessive force when dragging him out of his pod/cell, slamming him into a wall, and dragging him several more feet. 2017 WL 1157894, at *1 (N.D. Fla. Feb. 22, 2017), *report and recommendation adopted*, 2017 WL 1146949 (N.D. Fla. Mar. 27, 2017), *aff'd*, 757 F. App'x 828 (11th Cir. 2018). The court concluded that plaintiff's "refusal to comply with [officer's] order and overt efforts to evade [officer's] grasp were sufficient to necessitate the use of force to gain compliance." *Id*. at *6. The court further found that the evidence established that defendants "applied force in an effort to restore discipline and obtain compliance" and that defendants were entitled to summary judgment as to plaintiff's excessive force claims *Id*. at *7. (finding it unnecessary to address whether defendants are entitled to qualified immunity because the evidence supported no constitutional violation occurred.).

Although all facts and reasonable inferences drawn are in favor of the non-moving party, here, Castro-Reyes admitted that he has no independent recollection of the events on September 21, 2020. (D.E. #159, pg. 9; D.E. # 86-4, pgs. 11, 55). However, the uncontested facts in this case—which are supported by record, including the video footage—show that Plaintiff was only partially restrained by the

other officers, was not fully subdued, failed to comply with officer commands, and, in the eyes of a reasonable officer, could be perceived as actively resisting, during the encounter when officers arrived until various officers were able to restrain him. (D.E. #97; D.E. #105-4, pgs. 3, 12-13, 16). The Officers first attempted to gain compliance through verbal commands, which Plaintiff failed to comply. *Id*. Perez administered three distractionary strikes to Plaintiff not only to gain compliance, but also to release Plaintiff's control over his dominant hand, which he ultimately endured injuries to. (D.E. #105-1, pgs. 2, 13-15, 22; D.E. #105-8) (facts undisputed by Appellee). After prolonged struggle between several officers and Castro-Reyes, Perez removed Castro-Reyes from the wet and slippery apartment floor to safely secure him in handcuffs without further incident. (D.E. #159, pg. 7; D.E. #105-1, pgs. 16, 21). Only after Perez removed Plaintiff from the residence, were the officers able to handcuff and restrain Castro-Reyes. (D.E. #159, pg. 8). Under the totality of the circumstances, Perez's conduct, including the use of physical force, was reasonably necessary.

Applying the instructive precedent, this Court should have no trouble concluding that Perez did not violate Plaintiff's constitutional right to be free from excessive force and reverse the District Court's denial of summary judgment as to Count III in light of Plaintiff's unstable mental state, the wet and slippery scene, and the reasonably perceived resistance. *See Mobley*, 783 F.3d at 1351 (officers' use of

force in striking, kicking, and tasing suspect was not excessive where the suspect, though pinned on the ground, was "refusing to surrender his hands to be cuffed"); *Martinez v. Palm Bay Police Dep't*, 2006 WL 1933812, at *10 (finding the officers did not use a disproportionate amount of force in seizing the claimant pursuant to the Baker Act).[7]

## II. THE DISTRICT COURT ERRED IN DENYING QUALIFIED IMMUNITY AS TO PEREZ'S USE OF FORCE WHEN INJURED BY AN UNSECURED SUBJECT.

The District Court's misapplication of the undisputed facts combined with critical legal evidentiary errors resulted in the denial of the Officers' rightful entitlement to qualified immunity. An officer is entitled to qualified immunity from § 1983 claims when the conduct alleged does not violate a clearly established constitutional right of which a reasonable officer would have known. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Because excessive-force claims are inherently fact specific, 'generally no bright line exists for identifying when force is excessive; we have

---

[7] Furthermore, this Court should reverse the District Court Order with respect to Count V, state law assault and battery. Specifically, for the same reasons stated herein, there is no evidence to support Perez acted in bad faith, with malice, or wanton or willful disregard, an exceptionally high burden to establish, when he utilized the physical force – i.e. distractionary strike to release his pinned hand and pulling him outside to secure Castro-Reyes in handcuffs without further administration of force – upon Castro-Reyes who appeared to be actively resisting detention. This Court has jurisdiction over the supplemental state law claims. *See e.g. Coleman v. Hillsborough Cnty.*, 41 F.4th 1319, 1324 (11th Cir. 2022).

therefore concluded that unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity.'" *Johnson v. Conway*, 688 F. App'x 700, 706 (11th Cir. 2017).

"To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003). "[T]he qualified immunity standard is broad enough to cover some mistaken judgment, and it shields from liability all but the plainly incompetent or those who knowingly violate the law." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009).

Plaintiffs are the ones who bear the burden of establishing a violation of clearly established constitutional rights. *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). They must meet this burden by pointing to the "law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the Florida Supreme Court." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012). Meeting this burden requires reliance on more than "general, conclusory allegations or broad legal truisms" because "[t]he line between lawful and unlawful conduct is often vague" and the clearly established standard "demands that a bright line be crossed." *Id*. (citing *Harlow,* 457 U.S. 800; *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir. 1989)) (internal quotations omitted); *see also Hoyt v. Cooks,* 672 F.3d 972, 977 (11th

Cir. 2012). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post*, 7 F.3d at 1557 (citing *Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1323 (11th Cir. 1989)).

Here, as correctly pointed out in the District Court Order, "there is no dispute that the Defendant Officers [including Perez] were acting within their discretionary duties at the time of the incident. (D.E. #159, pg. 14); *see also Hinson*, 927 F.3d at 1116. The burden therefore shifted to Castro-Reyes to overcome the presumption of qualified immunity – i.e., to show that Perez committed a constitutional violation and this violation was clearly established. *Id*. The District Court erroneously concluded that Castro-Reyes met this burden despite the record evidence below failing to create a genuine issue of material fact regarding the objective reasonableness of Perez's physical force. However, the following cases are instructive in determining no constitutional violation of a clearly established right occurred.

### A.  A Reasonable Officer Would Perceive Castro-Reyes's Behavior as Active Resistance.

Assuming arguendo, that based on the video footage, whether Appellee was actively resisting cannot be determined as a matter of law, Perez is still entitled to qualified immunity. The Order improperly denies qualified immunity, in part because:

"[i]f a jury believes Mr. Castro-Reyes' version of the facts—where Mr. Castro-Reyes . . .[was] feeling the aftershocks of a taser, was nonviolent and under control—it could reasonably find that Defendant Perez knowingly violated clearly established principles articulated in a line of excessive force cases 'establish[ing] that unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment.'"

(D.E. #159, pg. 23). However, there is no version of Castro-Reyes's facts because he has no independent recollection of any of the events leading up to his hospital stay. (D.E. #159, pg. 9; D.E. # 86-4, pgs. 11, 55). Therefore, he cannot argue that he was not actively resisting the officers. Moreover, the inquiry is based on the objective reasonableness perceived by the officer. *See Hope v. Pelzer*, 536 U.S. 730, 747, 122 S. Ct. 2508, 2519, 153 L. Ed. 2d 666 (2002) (applying the objective immunity test which "is what a reasonable officer would understand"); *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997) (stating that the two-part analysis to a defense of qualified immunity requires the plaintiff to "demonstrate that the contours of his right were sufficiently clear so that a *reasonable officers would have understood* that their actions violated his rights"); *Whitner v. Moore*, 160 F. App'x 918, 920 (11th Cir. 2005) ("Whether the officer acted without justification is measured by a purely objective standard of what a reasonable officer in the defendant's position would have perceived"). The version of facts applicable here is what is seen on the video footage and the knowledge of the officers arriving on scene at the time of the encounter.

While it is possible that Castro-Reyes was unable to comply with the officers' commands, a reasonable officer, who arrived to a chaotic scene and having been informed by the dispatcher that the subject was violent and possibly high on narcotics, may have believed Plaintiff's "motions" was intentional resistance.[8] (D.E. #159, pg. 5; D.E. #105-5, pg. 19; D.E. #97); *see e.g. Alston v. Swarbrick*, 954 F.3d 1312, 1320 (11th Cir. 2020) (finding officer was entitled to qualified immunity with regards to initial force used to remove subject from the vehicle despite subject yelling that his foot was stuck because a reasonable officer could believe that he was actively resisting removal from vehicle following a heated verbal exchange).

The Court cites to *Acosta*[9] to support its decision. (D.E. #159, pg. 24). However, the Court in *Acosta* determined that the plaintiff posed no threat to the officers at the time the officers administered the tases and kicks that underlie his claim which occurred "after [plaintiff] had been taken to the ground and subdued and was no longer resisting". *Acosta v. Miami-Dade Cnty.*, 97 F.4th 1233, 1240 (11th Cir. 2024). In *Acosta*, this Court also denied qualified immunity because the plaintiff "did cease resisting". *Id*. at 1241. In the instant matter, no such

---

[8] Notably, it is unclear to the District Court whether Castro-Reyes was actively resisting even with the ability to watch video footage of the incident. Perez did not have the benefit of hindsight when making split-second decisions at the moment as commander of the scene to ensure the safety of his officers, himself and others.

[9] Notably, *Acosta* was decided in June of 2024, and thus would not be considered clearly established law at the time of the incident sufficient to defeat Perez's entitlement to qualified immunity.

determination was made. Instead, the district court concluded that it is unclear whether Castro-Reyes's motions were an act of resistance or an inability to comply. (D.E. #159, pg. 7). Thus, *Acosta* does not apply because Castro-Reyes was always on the ground, had not stopped resisting, nor was he "calm" and "just laying there". *Id*. at 1240. The District Court further concluded that despite Castro-Reyes's superhuman strength, it appeared that the officers on the scene had "control" of Castro-Reyes. (D.E. #159, pg. 22 at n.11). This is clearly erroneous based on the video footage and the testimony of various officers that clearly demonstrate the officers did not have control over Castro-Reyes until he was properly handcuffed once taken outside.

**B.** **There is No Clearly Established Right to be Free From Defensive Discretionary Strikes to Protect Oneself from Injury During Resistance.**

In *Bussey-Morice v. Gomez*, for example, the officers responded to a 911 call regarding a Baker acted patient who escaped, and were advised by medical staff and security that the individual was psychotic, threatening, and noncompliant. 587 F. App'x 621, 623 (11th Cir. 2014). When they encountered him, the officers instructed the individual to get on the ground, but he did not comply. *Id*. "Due to [individual's] repeated noncompliance and threatening stance," two officers simultaneously deployed their Tasers and tased the individual. *Id*. at 624. The individual continued to resist even after being tased multiple times and continued to not comply with the

officers' commands. *Id*. The officers then went "hands on" in an attempt to handcuff and restrain the individual, but the officers struggled due to the individual's "unbelievable strength". *Id*. "After a prolonged struggle, and once the anti-psychotic medications finally took effect," approximately six officers were able to handcuff and restrain the individual *Id*. at 624–25. Despite the tragic nature of the individual's death, the court affirmed summary judgment in favor of the officers on qualified immunity ground given the individual never ceased his resistance to the officers' attempt to restrain him and he continued to pose a threat throughout the duration of the officers' encounter with him. *Id*. at 630.

The Eleventh Circuit has held that the use of force, including the administration of "distractionary kicks" to a suspect, is not excessive when the suspect is "only partially restrained" –thus, not fully secured – and continues to "flail around" as the officers attempted to control and handcuff him. *See Marantes v. Miami-Dade Cty.*, 776 F. App'x 654, 664-667 (11th Cir. 2019) (affirming summary judgment and holding that administering four (4) "distractionary kicks" to a suspect who had one arm free and was flailing around as officers tried to handcuff him in order to gain compliance with the officers' commands was not objectively unreasonable under the Fourth Amendment).

In *Hinson*, the Eleventh Circuit held that the officers' conduct in taking suspect to the ground and fist-striking him five times were objectively reasonable uses of

force entitling the officers to qualified immunity. *Hinson*, 927 F.3d at 1121. The officer in *Hinson* was "straddling [plaintiff], trying to handcuff him. [Officer] repeatedly instructed [plaintiff] to give [officer] his hands, and [plaintiff] once again failed to comply." *Id*. at 1120–21. To ensure officer safety, the officer "inflicted hammer strikes…along with interceding repeated instructions to [plaintiff] to make this hands available [] for cuffing." *Id*.

Similarly, here, it was reasonably necessary for Perez to utilize the defensive tactic of discretionary strikes in an attempt to get Castro-Reyes to release his dominant hand which was pinned down by Castro-Reyes and causing him injury due to Castro-Reyes's refusal or "inability" to comply with the officers' demands. Thus, Perez is entitled to qualified immunity. *See Flowers v. City of Melbourne*, 2013 WL 12098771, at *5 (M.D. Fla. Aug. 21, 2013), *aff'd*, 557 F. App'x 893 (11th Cir. 2014) (Officer entitled to qualified immunity despite utilizing a "distractionary device" such as the "use of three or four closed-fist strikes to [plaintiff's] face when [he] seemed to resist [officer's] efforts to secure his hands and turn him over onto his stomach to secure him into custody…."); *White v. Knight*, 2017 WL 4277162, at *7 (M.D. Fla. Sept. 25, 2017) (officers entitled to qualified immunity despite use of multiple knee strikes to distract the suspect and gain compliance and break any grip suspect might have had on potential weapon).

**C.** **There is No Clearly Established Right to be Free from Being Pulled to Location Where Officers Can Properly Secure Actively Resisting Subject.**

In *Miles v. Jackson*, an inmate claimed officers used excessive force when dragging him out of his pod/cell, slamming him into a wall, and dragging him several more feet. 2017 WL 1157894, at *1 (N.D. Fla. Feb. 22, 2017), *report and recommendation adopted*, 2017 WL 1146949 (N.D. Fla. Mar. 27, 2017), *aff'd*, 757 F. App'x 828 (11th Cir. 2018). The court concluded that plaintiff's "refusal to comply with [officer's] order and overt efforts to evade [officer's] grasp were sufficient to necessitate the use of force to gain compliance." *Id*. at *6. The court further found that the evidence established that defendants "applied force in an effort to restore discipline and obtain compliance" and that defendants were entitled to summary judgment as to plaintiff's excessive force claims *Id*. at *7. Moreover, the courts in this Circuit have repeatedly found officers to be entitled to qualified immunity where plaintiffs are "dragged" out of their vehicles after the plaintiff failed to comply with the officer's instruction to step out of the vehicle. *See Andrews v. Marshall*, 845 F. App'x 849, 856 (11th Cir. 2021); *Sosa v. Hames*, 581 F. Supp. 2d 1254, 1277 (S.D. Fla. 2008) (finding officer was entitled to qualified immunity because "the act of pulling Sosa from the car and throwing him to the ground before handcuffing him is less severe than other behavior the Eleventh Circuit has determined to be reasonable and *de minimis*"); *Fluellen v. City of Plant City*, No.

8:16-CV-335-T-23AEP, 2016 WL 6729538, at \*4, n.7 (M.D. Fla. Nov. 15, 2016) (noting that "minimal amount of force and injury [such as pulling a plaintiff from a truck and wrestling plaintiff to the ground]...will not defeat an officer's qualified immunity in an excessive force case); *Stryker v. City of Homewood*, No. 2:16-CV-0832-VEH, 2017 WL 3191097, at \*13 (N.D. Ala. July 27, 2017).

Here, Perez testified that he removed Castro-Reyes from the house by pulling him outside by his feet and/or clothing to avoid the administration of further force given Plaintiff's active resistance, the wet and slippery floor, and the Officers' ineffective tactics to secure Plaintiff while inside the apartment. (D.E. #159, pg. 7; D.E. #105-1, pgs. 16, 21). It is undisputed that Castro-Reyes grabbed onto the door frame to prevent Perez from taking him outside of the residence. (D.E. #159, pg. 7). Perez was able to utilize the physical force necessary to loosen Castro-Reyes's grasp of the door frame, which caused him to hit his head on the two (2) steps. The physical force utilized by Perez was necessary in order to properly secure Castro-Reyes in handcuffs, which the officers were unable to do while inside due to Castro-Reyes's active resistance and failure to comply with officers' demands to turn over.

Given there is no decision in the Eleventh Circuit that has clearly established that an officer's use of removing the suspect from a wet and slippery floor in order to subdue and secure an actively resisting suspect constitutes excessive force under circumstances identical to these. *See Miles v. Jackson*, 2017 WL 1157894, at \*1

(N.D. Fla. Feb. 22, 2017), *report and recommendation adopted*, 2017 WL 1146949 (N.D. Fla. Mar. 27, 2017), *aff'd*, 757 F. App'x 828 (11th Cir. 2018).

## CONCLUSION

Given no constitutional violation occurred as demonstrated *supra* (I), this Court should reverse the District Court's Order on this basis alone as it is unnecessary to address further whether Perez are entitled to qualified immunity from Castro-Reyes's claims. Assuming *arguendo* that Perez's conduct was not objectionably reasonable as a matter of law, it cannot be said that there is a decision in the Eleventh Circuit that has clearly established that an officer's use of distractionary strikes to defend oneself from injuries caused by assailant and removing the suspect from a wet and slippery floor in order to subdue and secure an actively resisting suspect constitutes excessive force under circumstances identical to these. Accordingly, Perez is entitled to qualified immunity because he utilized force reasonable under the circumstances. The District Court's denial of qualified immunity must therefore be reversed.

WHEREFORE, based on the foregoing reasons, Appellant, SERGIO PEREZ, respectfully asserts that the District Court erred in denying his Motion for Summary Judgment and requests this Honorable Court to reverse the Order denying his Motion for Summary Judgment.

## CERTIFICATE OF COMPLIANCE

This Initial Brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 32(a)(7)(B)(iii), this brief contains 8,214 words.

Furthermore, this Initial Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a monospaced typeface using Microsoft Word 2010 in Times New Roman and 14-point font.


Dated: December 20, 2024.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of December, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and conventionally filed the foregoing document via Federal Express. I also certify that the foregoing document is being served this day on Benedict P. Kuehne, Esq., 100 S.E. 2nd St., Suite 3105, Miami, FL 33131, via transmission of Notices of Electronic Filing generated by CM/ECF and via Federal Express.

> WYDLER LAW
> Attorneys for Appellant, Perez
> Douglas Centre, PH-4
> 2600 Douglas Road
> Coral Gables, FL 33134
> (305) 446-5528
> (305) 446-0995 (fax)
>
>
> BY   /s/ *Lourdes Espino Wydler*
>       LOURDES E. WYDLER
>       F.B.:  719811
>       lew@wydlerlaw.com
>       LAUREN D. MARTIN
>       F.B.:  1034166
>       ldm@wydlerlaw.com
>       Secondary emails:
>       guertty@wydlerlaw.com